Mark B. Chassman (CA Bar No. 119619)
Email: mchassman@chassmanseelig.com
**CHASSMAN & SEELIG LLP**
11766 Wilshire Boulevard, Suite 270
Los Angeles, CA 90025
Telephone: (310) 929-7192
Fax: (310) 929-7627

Sarah A. Pfeiffer (CA Bar No. 278205)
Email: sap@msf-law.com
**MEISTER SEELIG & FEIN LLP**
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Fax: (646) 539-3649

*Attorneys for Plaintiff Sales Transaction Systems, LLC*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALES TRANSACTION SYSTEMS, LLC,<br><br>            Plaintiff,<br><br>   vs.<br><br>POYNT CO.,<br><br>            Defendant. | Case No. 3:18-cv-6862<br><br>**COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff SALES TRANSACTION SYSTEMS, LLC, ("STS") brings this action against defendant POYNT CO. ("Poynt") and hereby allege as follows:

## THE PARTIES

1. STS is a limited liability company organized and existing under the laws of California, having a place of business at 2390 Crenshaw Blvd., Ste. 239, Torrance, CA 90501. STS is the owner of a family of patents relating to secure payment transactions and point of sale systems, including U.S. Patent No. 9,684,893 ("the '893 Patent" or the "Asserted Patent").

2. Upon information and belief, Poynt is a Delaware Corporation with its principal place of business at 4151 Middlefield Road, Palo Alto, CA 94303.

## JURISDICTION AND VENUE

3. This action arises under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq*. This Court accordingly has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2202.

4. This Court has jurisdiction over Poynt because Poynt does business in the State of California and this District, maintains their principal place of business in the State of California and in this District, contracts to supply goods or services within the State of California and this District, has continuous and systematic business contacts within the State of California and this District, derives substantial revenue from interstate commerce from goods used or services rendered in the State of California and this District, and/or commits and has committed acts of patent infringement either within the State of California and this District, or outside the State of California and this District with a reasonable expectation that such acts would have consequences within the State of California and this District.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), 1391(c), 1400(b), and 1404(a).

## FACTS

*The Asserted Patent*

6. On June 20, 2017, U.S. Patent No. 9,684,893 ("the '893 Patent"), entitled "Apparatus and Method for a Wireless Point of Sale Terminal," a copy of which is attached hereto

1   as Exhibit A, was duly and legally issued by the United States Patent and Trademark Office

2   ("USPTO") to Tara Chand Singhal as the inventor.

3         7.      Plaintiff is the owner of the '893 Patent by assignment, having received all right,

4   title, and interest of the '893 Patent from the inventor.

5         8.      The '893 Patent identifies and sets out to solve several problems relating to

6   conducting secure transactions using wireless devices.  For example, people often carry multiple

7   cards that use magnetic stripes to conduct credit or bank card transactions.  ('893 Patent at 1:28-

8   40.)  Such devices have changing security issues, and the banking industry cannot always keep up

9   with these challenges.  (*Id.*)

10         9.      In particular, people frequently pay with credit and bank cards, but standard

11   transactions share the customer's private data, such as card number, name, and/or expiration date

12   with the merchant.  (*See, e.g., id*. at 1:28-52, 2:12-20.)  Further, those merchants may store that

13   data for its own purposes, such as facilitating returns and accounting practices.

14         10.      The risks associated with sharing credit and bank card data has evolved into a

15   significant technical problem as more transactions have begun to involve wireless communications,

16   such as WiFi, Bluetooth, RFID, NFC, and cellular communications.  Further, more transactions

17   involve the electronic exchange and/or storage of private data, which are vulnerable to hacking and

18   other security breaches.  There are also problems unique to the Internet, for example, it is possible

19   for criminals to intercept wireless transmissions and obtain data without either party being aware

20   that a breach of security has occurred and without being physically present.  Additionally, the

21   Internet made it much easier to use fraudulently obtained data via e-commerce, where the user is

22   not physically present and does not have to interact with a salesperson.

23         11.      In 2000, Visa International estimated that the annual cost of fraud was about $1

24   billion in the United States.  (*See* Graeme R. Newman, "Check and Card Fraud," p. 3, U.S.

25   Department of Justice (2003), attached as Exhibit C.)  Further, such fraud frequently includes

26   identity theft, including obtaining or accessing credit card accounts.  (*Id.*)  Criminals can work to

27   obtain personal information, such as a PIN to use a card or hacking into a retailer's customer

28   database to get credit card numbers.  (*Id.* at 6-7.)

1      12.     Further, "near field communications" or "NFC" raise significant security concerns when "someone 'listens in' on the transaction." (A. Dossey, "NFC: The Technology Behind Tap-and-Go Communication," p. 6 (Nov. 9, 2017), attached as Exhibit D).

13.     To address these problems, the '893 Patent proposes a technological solution to these problems, including creating a secure customer identifier that is based on the customer's private data, such as bank card data, but does not include any private identifying information when transmitted to the merchant. ('893 Patent at 7:29-31.) This prevents the customer's private data from being shared with merchants, but still allows card transactions to take place using the traditional financial structure. (*Id.* at 1:49-50.) The customer identifier can be used with mobile point of sales terminals that wirelessly transmit data to complete financial transactions. This improves flexibility for customers and merchants while protecting customers from exposing their private data.

14.     This solution offers a technical solution to the technical problems posed by conducting such financial transactions wirelessly. Several parties have noted a need for "a seamless and secure digital payment experience" that does not "expos[e] the consumer's account to fraud." ("All You Need to Know About Tokenization," available at https://usa.visa.com/dam/VCOM/Media%20Kits/PDF/visa-security-tokenization-infographic.pdf, attached as Exhibit E.) Others have noted that tokenization "provides a secure, cost-effective way to keep sensitive card details away from a merchant's system." (Mastercard PCI Tokenization Services, available at https://www.mastercard.com/gateway/processing/security/tokenization.html, attached as Exhibit F.) Tokenization involves integrating an application programming interface into payment applications, a technical solution for protecting private consumer data. (*Id.* at 3.) Without tokenization, "hacking RFID Cards was possible." (M. Borza, "Contactless Payment Cards and Smart Payments: Benefits vs Risks," pp. 4-5 (Oct. 9, 215), attached as Exhibit G.)

*Poynt's Infringing Systems and Services*

15.     Poynt makes, uses, sells, and/or offers to sell provides various mobile point of sales terminals for processing bankcards, including credit cards, using near-field communications via a

wireless communication network, including at least the Poynt Smart Terminal and Poynt 5 (the "Poynt Products").

16. Poynt instructs Customers regarding the use of its products and near-field communication at https://support.poynt.com/hc/en-us and https://support.poynt.com/hc/en-us/articles/2155519285.

17. The Poynt Services infringes at least claims 1-8 of the '893 Patent.

18. A general, exemplary description of how the Poynt Service infringes a sample claim of the Asserted Patent is attached as Exhibit B, which is incorporated by reference herein in its entirety.

*Poynt's Knowledge of the Asserted Patent*

19. On October 3, 2018, Plaintiff, through its counsel, formally notified Poynt CEO Osamaa Bedier, via FedEx letter, that products made, used, sold, or offered for sale by Poynt, including the Poynt Products, infringed the Asserted Patent, including a chart detailing the infringement of an exemplary claim. Upon information and belief, Poynt received the October 3, 2018 letter on or about October 4, 2018.

20. Since becoming aware of the Asserted Patent on or about October 4, 2018, Poynt continued to develop, make, use, sell, and offer to sell the Poynt Service to customers, thereby willfully and knowingly infringing the Asserted Patent.

**COUNT 1 – INFRINGEMENT OF THE '893 PATENT**

21. Plaintiff repeats the allegations contained in the preceding paragraphs 1 through 20 as though fully set forth herein.

22. Upon information and belief, Poynt has in the past infringed and continues to infringe the '893 Patent, directly and/or by contributory infringement and/or by inducement of infringement, by making, using, selling and/or offering to sell, in this judicial district, throughout the United States, and elsewhere, the Poynt Products, which embody the patented inventions of the '893 Patent.

23. Pursuant to 35 U.S.C. § 271(a), Poynt is liable for direct infringement of the '893 Patent by having made, used, offered to sell, or sold and continuing to make, use, sell and/or offer

1    to sell the Poynt Products in the United States.  Poynt's infringement includes, but is not limited to,
2    the manufacture, use, sale, importation and/or offer for sale of the Poynt Service that embodies the
3    patented invention of the '893 Patent.  Poynt has contracted to sell and has sold the Poynt Products
4    (in configurations generally similar to the allegations previously made herein) to, *inter alia*,
5    Customers.  Poynt continues to make, use, sell, offer to sell, and/or import Poynt Products despite
6    having knowledge of the infringement of the '893 Patent as discussed *supra*.

7    24.    Pursuant to 35 U.S.C. § 271(b), Poynt is liable for inducement of infringement by
8    having, and continuing to, knowingly cause (or intend to cause) the direct infringement of the '893
9    Patent by users of the Poynt Products.

10   25.    Pursuant to 35 U.S.C. § 271(c), Poynt is liable for contributory infringement of the
11   '893 Patent by having sold or offered to sell and continuing to sell or offer to sell the Poynt
12   Products, and the components thereof, that comprise a material component of the invention
13   embodied in the '893 Patent, that are especially made or adapted for use in infringing the '893
14   Patent, and that are not suitable for any substantial non-infringing use with knowledge that the '893
15   Patent was/is being directly infringed by users.

16   26.    Pursuant to 35 U.S.C. 271(f), Poynt is liable for infringement of the '893 Patent by
17   knowingly supplying customers outside of the United States with all or a substantial portion of the
18   components of the Poynt Products in or from the United States in a manner to actively induce the
19   combination of such components.  Further, any the components Poynt supplies have no other
20   substantial non-infringing use and are not staple articles or commodities of commerce.  Poynt knew
21   that the combination of components and use of the Poynt would infringe the '893 Patent if it
22   occurred within the United States.

23   27.    Upon information and belief, Poynt's infringement of the '893 Patent is willful,
24   deliberate, and intentional by continuing its acts of infringement with knowledge of the '893 Patent
25   and thus acting in reckless disregard of Plaintiff's patent rights.

26   28.    As a result of Poynt's acts of infringement of the '893 Patent, Plaintiff has suffered
27   injury to its business and property in an amount to be determined as damages, and will continue to
28   suffer damages in the future.

29. Unless an injunction is issued enjoining Poynt and their officers, agents, servants, employees and attorneys, and all those persons in active concert or participation with them from infringing the '893 Patent, Plaintiff will suffer irreparable injury for which there is no adequate remedy at law.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. A declaration that Poynt has infringed and is infringing, has induced and is inducing, has contributed and is contributing to the infringement of the '893 Patent;

B. A permanent injunction enjoining Poynt, its officers, agents, servants, employees, affiliates and attorneys, and all those in active concert or participation with them, from further infringing, inducing infringement, and contributing to the infringement of the '893 Patent;

C. An award of damages adequate to compensate Plaintiff for the infringement of the '893 Patent by Poynt and its Customers;

D. A declaration that Poynt's continuing infringement of the '893 Patent was and is willful, justifying a trebling of the award of damages under 35 U.S.C. § 284, or such other enhancement of the award of damages that the Court deems appropriate;

E. An award of pre-judgment and post-judgment interest on the damages caused by reason of Poynt's infringement of the Asserted Patent;

F. A declaration that this an exceptional case and that Plaintiff be granted its reasonable attorneys' fees and expenses in accordance with 35 U.S.C. § 285;

G. An award of costs and expenses to Plaintiff; and

H. A grant to Plaintiff of such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Sales Transaction Systems, LLC, demands trial by jury on all claims and issues so triable.

Dated: November 13, 2018

By: /s/ Sarah A. Pfeiffer

Sarah A. Pfeiffer

Mark B. Chassman (CA Bar No. 119619)
Email: mchassman@chassmanseelig.com
**CHASSMAN & SEELIG LLP**
11766 Wilshire Boulevard, Suite 270
Los Angeles, CA 90025
Telephone: (310) 929-7192
Fax: (310) 929-7627

Sarah A. Pfeiffer (CA Bar No. 278205)
Email: sap@msf-law.com
**MEISTER SEELIG & FEIN LLP**
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Fax: (646) 539-3649