Mark B. Chassman (CA Bar No. 119619)
Email: mchassman@chassmanseelig.com
**CHASSMAN & SEELIG LLP**
11766 Wilshire Boulevard, Suite 270
Los Angeles, CA 90025
Telephone: (310) 929-7192
Fax: (310) 929-7627

Sarah A. Pfeiffer (CA Bar No. 278205)
Email: sap@msf-law.com
**MEISTER SEELIG & FEIN LLP**
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Fax: (646) 539-3649

*Attorneys for Plaintiff Sales Transaction Systems, LLC*

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALES TRANSACTION SYSTEMS, LLC,<br><br>　　　　　Plaintiff,<br><br>　vs.<br><br>POYNT CO.,<br><br>　　　　　Defendant. | Case No. 4:18-cv-6862-YGR<br><br>**FIRST AMENDED COMPLAINT FOR PATENT INFRINGEMENT**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Date Complaint Filed: Nov. 13, 2018<br>Trial Date: Not Set |

Plaintiff SALES TRANSACTION SYSTEMS, LLC, ("STS"), by and through its undersigned counsel, for its First Amended Complaint, pursuant to Fed. R. Civ. P. 15(a)(1)(B), hereby alleges claims against defendant POYNT CO. ("Poynt") as follows:

## THE PARTIES

1. STS is a limited liability company organized and existing under the laws of California, having a place of business at 2390 Crenshaw Blvd., Ste. 239, Torrance, CA 90501. STS is the owner of a family of patents relating to secure payment transactions and point of sale systems, including U.S. Patent No. 9,684,893 ("the '893 Patent" or the "Asserted Patent").

2. Upon information and belief, Poynt is a Delaware Corporation with its principal place of business at 4151 Middlefield Road, Palo Alto, CA 94303.

## JURISDICTION AND VENUE

3. This action arises under the Patent Laws of the United States, 35 U.S.C. § 1, *et seq*. This Court accordingly has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), and 2202.

4. This Court has jurisdiction over Poynt because Poynt does business in the State of California and this District, maintains its principal place of business in the State of California and in this District, contracts to supply goods or services within the State of California and this District, has continuous and systematic business contacts within the State of California and this District, derives substantial revenue from interstate commerce from goods used or services rendered in the State of California and this District, and/or commits and has committed acts of patent infringement either within the State of California and this District, or outside the State of California and this District with a reasonable expectation that such acts would have consequences within the State of California and this District.

5. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b), 1391(c), 1400(b), and 1404(a).

## FACTS

*The Asserted Patent*

6. On June 20, 2017, U.S. Patent No. 9,684,893 ("the '893 Patent"), entitled "Apparatus and Method for a Wireless Point of Sale Terminal," a copy of which is attached hereto

as Exhibit A, was duly and legally issued by the United States Patent and Trademark Office ("USPTO") to Tara Chand Singhal as the inventor.

7. Plaintiff is the owner of the '893 Patent by assignment, having received all right, title, and interest of the '893 Patent from the inventor.

8. The '893 Patent identifies and sets out to solve several problems relating to conducting secure transactions using wireless devices. For example, people often carry multiple cards that use magnetic stripes to conduct credit or bank card transactions. ('893 Patent at 1:28-40.) Such devices have changing security issues, and the banking industry cannot always keep up with these challenges. (*Id.*)

9. In particular, people frequently pay with credit and bank cards, but standard transactions share the customer's private data, such as card number, name, and/or expiration date with the merchant. (*See, e.g., id*. at 1:28-52, 2:12-20.) Further, those merchants may store that data for its own purposes, such as facilitating returns and accounting practices.

10. The risks associated with sharing credit and bank card data has evolved into a significant technical problem as more transactions have begun to involve wireless communications, such as WiFi, Bluetooth, RFID, NFC, and cellular communications. Further, more transactions involve the electronic exchange and/or storage of private data, which are vulnerable to hacking and other security breaches. There are also problems unique to the Internet, for example, it is possible for criminals to intercept wireless transmissions and obtain data without either party being aware that a breach of security has occurred and without being physically present. Additionally, the Internet made it much easier to use fraudulently obtained data via e-commerce, where the user is not physically present and does not have to interact with a salesperson.

11. In 2000, Visa International estimated that the annual cost of fraud was about $1 billion in the United States. (*See* Graeme R. Newman, "Check and Card Fraud," p. 3, U.S. Department of Justice (2003), attached as Exhibit C.) Further, such fraud frequently includes identity theft, including obtaining or accessing credit card accounts. (*Id.*) Criminals can work to obtain personal information, such as a PIN to use a card or hacking into a retailer's customer database to get credit card numbers. (*Id.* at 6-7.)

12. Further, "near field communications" or "NFC" raise significant security concerns when "someone 'listens in' on the transaction." (A. Dossey, "NFC: The Technology Behind Tap-and-Go Communication," p. 6 (Nov. 9, 2017), attached as Exhibit D).

13. To address these problems, the '893 Patent proposes a technological solution to these problems, including creating a secure customer identifier that is based on the customer's private data, such as bank card data, but does not include any private identifying information when transmitted to the merchant. ('893 Patent at 7:29-31.) This prevents the customer's private data from being shared with merchants, but still allows card transactions to take place using the traditional financial structure. (*Id.* at 1:49-50.) The customer identifier can be used with mobile point of sales terminals that wirelessly transmit data to complete financial transactions. This improves flexibility for customers and merchants while protecting customers from exposing their private data.

14. This solution offers a technical solution to the technical problems posed by conducting such financial transactions wirelessly. Several parties have noted a need for "a seamless and secure digital payment experience" that does not "expos[e] the consumer's account to fraud." ("All You Need to Know About Tokenization," available at https://usa.visa.com/dam/VCOM/Media%20Kits/PDF/visa-security-tokenization-infographic.pdf, attached as Exhibit E.) Others have noted that tokenization "provides a secure, cost-effective way to keep sensitive card details away from a merchant's system." (Mastercard PCI Tokenization Services, available at https://www.mastercard.com/gateway/processing/security/tokenization.html, attached as Exhibit F.) Tokenization involves integrating an application programming interface into payment applications, a technical solution for protecting private consumer data. (*Id.* at 3.) Without tokenization, "hacking RFID Cards was possible." (M. Borza, "Contactless Payment Cards and Smart Payments: Benefits vs Risks," pp. 4-5 (Oct. 9, 215), attached as Exhibit G.)

*Poynt's Infringing Systems and Services*

15. "Customers" refers to any person or entity Poynt sells its products (including hardware, software, and applications) to directly, such as distributors, resellers, and/or merchants, and to any person or entity who uses Poynt's products (including hardware, software, and

3

1    applications), such as merchants or other Poynt users, including but not limited to 3 Geeks Food
2    Truck, Brooklyn Bagel, Superior Carstar Paint & Body, Experience Powersports, and Twin Rocks
3    Motel.
4           16.    Poynt makes, uses, sells, and/or offers to sell provides various mobile point of sales
5    terminals for processing bankcards, including credit cards, using near-field communications via a
6    wireless communication network, including at least the Poynt Smart Terminal and Poynt 5 (the
7    "Poynt Products").  Poynt further sells and offers for sale with the Poynt Products, software,
8    applications, and APIs ("Software"), including software that is configured to operate in conjunction
9    with the Poynt Products to provide therewith various payment capabilities, including but not
10   limited to the Poynt OS, Poynt HQ, and other apps Poynt offers in the Poynt App Marketplace,
11   including but not limited to eThor and Lightning (the Poynt Products provided with such Software
12   referred to herein as the "Accused Systems").  Exhibit H shows various exemplary components
13   that may be configured within the Accused Systems to infringe the '893 Patent, which are
14   described in more detail at https://poynt.com/products/#software.
15          17.    The Accused Systems are made or especially adapted for infringement of the '893
16   Patent because they include the features detailed in Exhibit B which cause the Poynt Products and
17   Software to infringe the '893 Patent.
18          18.    Upon information and belief, the Accused Systems are not a staple article or
19   commodity of commerce suitable for substantial non-infringing use because the Accused Systems
20   and components thereof are specifically designed to provide infringing payment services as
21   detailed in Exhibit B and are provided to Customers in a manner that is capable of infringement
22   and is intended for use that would infringe the '893 Patent.
23          19.    The Accused Systems are operable to provide a smart terminal platform for payment
24   services.
25          20.    Poynt sells and offers for sale the Accused Systems and/or components thereof
26   throughout the United States using a network of distributors (also referred to as "Resellers"),
27   including but not limited to Boomtown and TouchSuite.  *See* Exhibit I
28

1  (https://poynt.com/resellers/).  Such distributors are included within the definition of Poynt's
2  Customers.

3        21.    Poynt sells and offers for sale the Accused Systems and/or components thereof
4  throughout the world, including at least Canada, South America, Asia, and Europe using a network
5  of distributors (also referred to as Resellers).  *See* Exhibit J.  Such distributors are included within
6  the definition of Customers.

7        22.    Poynt instructs Customers regarding how to use the Poynt Products with the
8  Software in various ways, including but not limited to, via a welcome email that the Customers
9  receive to create a Poynt HQ login.  *See* Exhibit K (printouts from various pages the Poynt makes
10 available on its website, poynt.com and support.poynt.com).

11       23.    Poynt instructs Customers regarding the use of its products and near-field
12 communication in various ways, including but not limited to, https://support.poynt.com/hc/en-us
13 and https://support.poynt.com/hc/en-us/articles/360002013013-How-to-process-a-payment-using-
14 NFC-Payment-Mode-Apple-or-Android-Pay-on-the-device- (Exhibit K), and through webinars.
15 Poynt further instructs users how to use the Poynt Products with the Software to infringe the '893
16 Patent.  *See id.*  Such instructions and guidance, which are generally available via Poynt's website,
17 are further set forth in Exhibit B, in addition to the referenced webpages and exhibits to this
18 Complaint, all of which are incorporated herein by reference.

19       24.    Poynt instructs its Customers regarding how to use the Poynt Products with the
20 Software to infringe the '893 Patent in various ways, including but not limited to, the webpage
21 https://poynt.com/sales/, which includes video instructions and training (such as Poynt University
22 and Poynt Tutorial), marketing materials, sales tools, case studies, information regarding
23 applications for use with the Poynt Products, and other instructions and guidance regarding how to
24 infringe the '893 Patent.  *See* Exhibit K.

25       25.    Additionally, on information and belief, Poynt responds to inquiries regarding the
26 use of the Accused Systems at the email address support@poynt.com.  On information and belief,
27 Poynt's responses to such inquiries includes instructions and guidance on how to use the Poynt
28 Products with the Software to infringe the '893 Patent.

26. The Accused Systems infringe at least claims 1-8 of the '893 Patent.

27. A general, exemplary description of how the Accused Systems infringes a sample claim of the Asserted Patent is attached as Exhibit B, which is incorporated by reference herein in its entirety.

*Poynt's Knowledge of the Asserted Patent*

28. On October 3, 2018, Plaintiff, through its counsel, formally notified Poynt CEO Osamaa Bedier, via FedEx letter, that products made, used, sold, or offered for sale by Poynt, including the Accused Systems, infringed the Asserted Patent, including a chart detailing the infringement of an exemplary claim. Upon information and belief, Poynt received the October 3, 2018 letter on or about October 4, 2018.

29. On November 15, 2018, Plaintiff, through its counsel, notified Poynt CEO Osama Bedier, via FedEx letter, that it had filed the original Complaint (D.I. 1) in this matter, including a copy of that Complaint. Upon information and belief, Poynt received the November 15, 2018 letter on or about November 16, 2018.

**COUNT 1 – INFRINGEMENT OF THE '893 PATENT**

30. Plaintiff repeats the allegations contained in the preceding paragraphs 1 through 29 as though fully set forth herein.

31. Upon information and belief, Poynt has in the past infringed and continues to infringe the '893 Patent, directly and/or by inducement of infringement and/or by contributory infringement, by making, using, selling and/or offering to sell, in this judicial district, throughout the United States, and elsewhere, the Accused Systems, which embody the patented inventions of the '893 Patent.

32. Pursuant to 35 U.S.C. § 271(a), Poynt is liable for direct infringement of the '893 Patent by having made, used, offered to sell, or sold and continuing to make, use, sell and/or offer to sell the Accused Systems in the United States. Poynt's infringement includes, but is not limited to, the manufacture, use, sale, importation and/or offer for sale of the Accused Systems that embodies the patented invention of the '893 Patent. Poynt has contracted to sell and has sold the Accused Systems (in configurations generally similar to the allegations previously made herein) to,

1  *inter alia*, Customers.  Poynt continues to make, use, sell, offer to sell, and/or import Accused
2  Systems despite having knowledge of the infringement of the '893 Patent since on or about
3  October 4, 2018, as discussed *supra*.

4  33.  Poynt has been aware of the '893 Patent and the manner of infringing the '893
5  Patent since on or about October 4, 2018.  Pursuant to 35 U.S.C. § 271(b), Poynt is liable for
6  inducement of infringement by having, and continuing to, knowingly cause (or intend to cause) the
7  direct infringement of the '893 Patent by Customers of the Accused Systems in the United States
8  that use the Accused Systems in accordance with at least claims 1-8 of the '893 Patent.  Moreover,
9  by marketing and selling the Accused Systems, Poynt is liable for inducement of infringement.  By
10 further providing instructions on how to use the Accused Systems in an infringing manner, Poynt is
11 liable for inducement of infringement.  *See, e.g.,* Paragraphs 15-29 above.

12 34.  Poynt has been aware of the '893 Patent and the manner of infringing the '893
13 Patent since on or about October 4, 2018.  Pursuant to 35 U.S.C. § 271(c), Poynt is liable for
14 contributory infringement of the '893 Patent by having sold or offered to sell and continuing to sell
15 or offer to sell the Accused Systems, and the components thereof, that comprise a material
16 component of the invention embodied in the '893 Patent, that are especially made or adapted for
17 use in infringing the '893 Patent, and that are not suitable for any substantial non-infringing use
18 with knowledge that the '893 Patent was/is being directly infringed by Customers.  Poynt, with
19 knowledge of the '893 Patent continues to sell, the Poynt Smart Terminal, Poynt 5 and Software
20 which are components, of the Accused Systems, each of which is a material component of the
21 inventions embodied in the '893 Patent and of the Accused System.  Furthermore, the Accused
22 Systems and/or components thereof are not suitable for any substantial non-infringing use and are
23 especially made or adapted for use in infringing the '893 Patent.  Poynt is therefore liable for
24 contributory infringement of the '893 Patent in accordance with claims 1-8 of the '893 Patent
25 through having knowledge that the '893 Patent is being directly infringed.  *See, e.g.,* Paragraphs
26 15-29 above.

27 35.  Poynt has been aware of the '893 Patent and the manner of infringing the '893
28 Patent since on or about October 4, 2018.  Pursuant to 35 U.S.C. 271(f), Poynt is liable for

infringement of the '893 Patent by knowingly supplying customers outside of the United States with all or a substantial portion of the components of the Accused Systems in or from the United States in a manner to actively induce the combination of such components.  Further, any the components Poynt supplies have no other substantial non-infringing use and are not staple articles or commodities of commerce.  Poynt knew that the combination of components and use of the Poynt would infringe the '893 Patent if it occurred within the United States.  *See, e.g.*, Paragraphs 15-29 above.

36.     Since becoming aware of the '893 Patent on or about October 4, 2018, which included a detailed claim chart setting forth the basis for infringement, Poynt continued to develop, make, use, sell, and offer to sell the Accused Systems to Customers, thereby willfully and knowingly infringing, directly and indirectly, the '893 Patent.

37.     Poynt did not respond to the letter it received on or about October 4, 2018, including failing to provide any basis for non-infringement or invalidity, or any other justification for continuing its infringement of the '893 Patent.

38.     Since being provided with a copy of the original Complaint (D.I. 1) on or about November 16, 2018, which included detailed allegations regarding infringement and a detailed claim chart setting forth the basis for infringement, Poynt continued to develop, make, use, sell, and offer to sell the Accused Systems to Customers, thereby willfully and knowingly infringing, directly and indirectly, the '893 Patent.

39.     The '893 Patent is given the presumption of validity.  Since becoming aware of the '893 Patent and the basis for infringement on or about October 4, 2018, Poynt has not established by clear and convincing evidence that the '893 Patent is invalid for any reason, nor has Poynt challenged the validity of the '893 Patent in any federal court or before the USPTO.

40.     Upon information and belief, based on a review of the Poynt website and public information, Poynt has not taken any steps to stop infringing the '893 Patent since becoming aware of the '893 Patent and the basis for infringement on or about October 4, 2018.  Upon information and belief, based on a review of the Poynt website, Poynt has not modified any of its instructions or guidance to Customers to prevent Customers from infringing the '893 Patent.

41. Upon information and belief, Poynt has not relied on a formal opinion of counsel to continue its infringement of the '893 Patent despite its knowledge of its infringement.

42. Upon information and belief, based on Poynt's failure to avoid infringement to date, Poynt will continue its infringing activity throughout the course of this Action, despite additional discovery and evidence, further demonstrating its reckless disregard of Plaintiff's patent rights.

43. Therefore, in view of the actions set forth in Paragraphs 28-29 and 36-42, Poynt's infringement of the Accused Systems is willful, deliberate, and intentional by continuing its acts of infringement with knowledge of the '893 Patent and thus acting in reckless disregard of Plaintiff's patent rights.

44. As a result of Poynt's acts of infringement of the '893 Patent, Plaintiff has suffered injury to its business and property in an amount to be determined as damages, and will continue to suffer damages in the future.

45. Unless an injunction is issued enjoining Poynt and their officers, agents, servants, employees and attorneys, and all those persons in active concert or participation with them from infringing the '893 Patent, Plaintiff will suffer irreparable injury for which there is no adequate remedy at law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. A declaration that Poynt has infringed and is infringing, has induced and is inducing, has contributed and is contributing to the infringement of the '893 Patent;

B. A permanent injunction enjoining Poynt, its officers, agents, servants, employees, affiliates and attorneys, and all those in active concert or participation with them, from further infringing, inducing infringement, and contributing to the infringement of the '893 Patent;

C. An award of damages adequate to compensate Plaintiff for the infringement of the '893 Patent by Poynt and its Customers;

D. A declaration that Poynt's continuing infringement of the '893 Patent was and is willful, justifying a trebling of the award of damages under 35 U.S.C. § 284, or such other enhancement of the award of damages that the Court deems appropriate;

1   E.  An award of pre-judgment and post-judgment interest on the damages caused by reason of
2       Poynt's infringement of the Asserted Patent;
3   F.  A declaration that this an exceptional case and that Plaintiff be granted its reasonable
4       attorneys' fees and expenses in accordance with 35 U.S.C. § 285;
5   G.  An award of costs and expenses to Plaintiff; and
6   H.  A grant to Plaintiff of such other and further relief as the Court may deem just and proper.

**JURY DEMAND**

Sales Transaction Systems, LLC, demands trial by jury on all claims and issues so triable.

Dated: April 12, 2019

By: _/s/ Sarah A. Pfeiffer_

Sarah A. Pfeiffer
Mark B. Chassman (CA Bar No. 119619)
Email: mchassman@chassmanseelig.com
**CHASSMAN & SEELIG LLP**
11766 Wilshire Boulevard, Suite 270
Los Angeles, CA 90025
Telephone: (310) 929-7192
Fax: (310) 929-7627

Sarah A. Pfeiffer (CA Bar No. 278205)
Email: sap@msf-law.com
**MEISTER SEELIG & FEIN LLP**
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Fax: (646) 539-3649

## CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2019, I caused an email providing the foregoing to be sent via the Court's ECF notification system to the persons listed below:

CLEMENT SETH ROBERTS
croberts@orrick.com
JACOB M. HEATH
jheath@orrick.com
WILL MELEHANI
wmelehani@orrick.com
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:     +1 415 773 5700
Facsimile:     +1 415 773 5759

*Attorneys of record for Defendant Poynt Co.*

MEISTER SEELIG & FEIN LLP

By: */s/ Sarah A. Pfeiffer*
Sarah A. Pfeiffer