CLEMENT SETH ROBERTS (SBN 209203)
croberts@orrick.com
WILL MELEHANI (SBN 285916)
wmelehani@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:     +1 415 773 5700
Facsimile:     +1 415 773 5759

JACOB M. HEATH (SBN 238959)
jheath@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA  94025
Telephone:     +1 650 614 7400
Facsimile:     +1 650 614 7401

Attorneys for Defendant
POYNT CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALES TRANSACTION SYSTEMS, LLC,<br><br>Plaintiff,<br><br>v.<br><br>POYNT CO.,<br><br>Defendant. | Case No. 4:18-CV-6862-YGR<br><br>**DEFENDANT POYNT CORPORATION'S NOTICE OF MOTION AND MOTION TO DISMISS FOR PATENT INELIGIBILITY UNDER 35 U.S.C. § 101; MEMORANDUM OF POINTS AND AUTHORITY IN SUPPORT**<br><br>Date:          June 11, 2019<br>Time:          2:00 p.m.<br>Courtroom: 1, 4th Floor<br><br>Judge:        Hon. Yvonne Gonzalez Rogers<br><br>Date Action Filed:  Nov. 13, 2018 |

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**NOTICE OF MOTION**

TO THE COURT, ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that the following Motion to Dismiss for Patent Ineligibility Under 35 U.S.C. § 101 ("Motion") will be heard on June 11, 2019, at 2:00 p.m., or as soon thereafter as counsel may be heard, in the United States District Court for the Northern District of California, Oakland Courthouse, Courtroom 1, Fourth Floor, located at 1301 Clay Street, Oakland, California, before the Honorable Yvonne Gonzalez Rogers.

Defendant Poynt Corporation will, and hereby does, move this Court pursuant to Federal Rule of Civil Procedure 12(b)(6) to grant its Motion.  Plaintiff Sales Transaction Systems, LLC's First Amended Complaint asserts infringement of U.S. Patent No. 9,684,893, but the claims of that patent recite subject matter that is ineligible for patenting under 35 U.S.C. § 101 as set forth in the Supreme Court's decision in *Alice Corp. Pty. v. CLS Bank Int'l,* 573 U.S. 208, 217 (2014), and subsequent Federal Circuit case law.  This Motion is based on this Notice of Motion and Motion, the following Memorandum of Points and Authorities, the record in this matter, and any other and further papers, evidence, and argument as may be submitted in connection with this Motion.

**STATEMENT OF ISSUE TO BE DECIDED**

Whether the Complaint fails to state a claim upon which relief can be granted because the claims of the U.S. Patent No. 9,684,893 are directed to patent-ineligible subject matter under 35 U.S.C. § 101.

1

**TABLE OF CONTENTS**

2
**Page**

3   I.      INTRODUCTION ........................................................................................................ 1

4   II.     STATEMENT OF FACTS ........................................................................................ 1

5           A.      The Parties ................................................................................................... 1

            B.      The Patent..................................................................................................... 2

6   III.    LEGAL STANDARDS.............................................................................................. 4

7           A.      Motion to Dismiss Standard........................................................................ 4

            B.      Patent Eligibility Standard .......................................................................... 5

8   IV.     ARGUMENT ........................................................................................................... 7

9           A.      The Claims of the '893 Patent Are Directed to the Abstract Idea of
                    Authorizing Card Payments. ........................................................................ 7

10          B.      The Claims of the '893 Patent Lack Any Inventive Concept. ................... 9

11  V.      CONCLUSION ....................................................................................................... 13

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Affinity Labs of Texas, LLC v. Amazon.com, Inc.*,
5
    838 F.3d 838 (2016) ....................................................................................................6

6

*Alice Corp. Pty. v. CLS Bank Int'l*,
    573 U.S. 208 (2014) ........................................................................................... *passim*
7

*Blue Spike, LLC v. Google Inc.*,
8
    No. 14-cv-01650-YGR, 2015 U.S. Dist. LEXIS 119382 (N.D. Cal. Sep. 8,
9
    2015) ...........................................................................................................................6

10

*ChargePoint, Inc. v. SemaConnect, Inc.*,
    No. 2018-1739, 2019 U.S. App. LEXIS 9191 (Fed. Cir. Mar. 28, 2019) ...................5
11

*Cleveland Clinic Found. v. True Health Diagnostics LLC*,
12
    No. 2018-1218, 2019 U.S. App. LEXIS 9451 (Fed. Cir. Apr. 1, 2019) .....................5

13

*Content Extraction & Trans. LLC v. Wells Fargo Bank, Nat'l Ass'n*,
14
    776 F.3d 1343 (Fed. Cir. 2014) ...........................................................................2, 5, 10

15

*Credit Acceptance Corp. v. Westlake Servs.*,
    859 F.3d 1044 (Fed. Cir. 2017) ...................................................................................7
16

*Dropbox, Inc. v. Synchronoss Techs., Inc.*,
17
    No. 18-cv-03685-LHK, 2019 WL 1170776 (N.D. Cal. Mar. 13, 2019) ...................10

18

*Elec. Power Grp., LLC v. Alstom S.A.*,
19
    830 F.3d 1350 (Fed. Cir. 2016) ...................................................................................6

20

*Enfish, LLC v. Microsoft Corp.*,
    822 F.3d 1327 (Fed. Cir. 2016) ..............................................................................6, 11
21

*Genetic Techs. Ltd. v. Merial L.L.C.*,
22
    818 F.3d 1369 (Fed. Cir. 2016) ...............................................................................4, 5

23

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015) ..............................................................................9, 11
24

*Internet Patents Corp. v. Active Network, Inc.*,
25
    790 F.3d 1343 (Fed. Cir. 2015) ...............................................................................6, 7

26

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
27
    876 F.3d 1372 (Fed. Cir. 2017) ...............................................................................7, 8

28

POYNT'S NOT. OF MOTION AND MOTION
TO DISMISS FOR PATENT INELIGIBILITY
CASE NO. 4:18-CV-6862-YGR

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   566 U.S. 66 (2012) ................................................................................................6, 10

*Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*,
   811 F.3d 1314 (Fed. Cir. 2016) ..............................................................................5, 6

*Pareto v. FDIC*,
   139 F.3d 696 (9th Cir. 1998) ...................................................................................12

*Personalized Media Commc'ns, LLC v. Amazon.com, Inc.*,
   161 F. Supp. 3d 325 (D. Del. 2015) .........................................................................12

*RecogniCorp, LLC v. Nintendo Co.*,
   855 F.3d 1322 (Fed. Cir. 2017) ......................................................................6, 11, 12

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018) ...........................................................................4, 11

*Singhal v. The Executive Branch of the United States Government, et al.*,
   No. 2:13-cv-07857-DDP-PJW (C.D. Cal. Oct. 24, 2013), ECF No. 1 ......................2

*In Re Singhal*,
   No. 14-722, 2014 WL 7242806 (Dec. 16, 2014) ......................................................2

*Smart Sys. Innovations, LLC v. Chicago Transit Auth.*,
   873 F.3d 1364 (Fed. Cir. 2017) ............................................................................8, 10

*In Re TLI Comm. LLC Patent Lit.*,
   823 F.3d 607 (Fed. Cir. 2016) ..............................................................................9, 12

*Twilio, Inc. v. Telesign Corp.*,
   249 F. Supp. 3d 1123 (N.D. Cal. 2017) ...................................................................10

*Two-Way Media Ltd v. Comcast Cable Comm., LLC*,
   874 F.3d 1329 (Fed. Cir. 2017) ......................................................................6, 9, 11

**Statutes**

35 U.S.C. § 101 .................................................................................................................5, 7

**Other Authorities**

Fed. R. of Civ. P. 12(b)(6) .....................................................................................................5

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2

## I.       INTRODUCTION

3          The patent claims asserted in this case recite a basic credit card payment authorization

4   process and are ineligible for patenting.  The claims call for accepting a payment card, sending

5   data about the merchant, customer and transaction to a card authorization network, and receiving

6   a payment authorization in response.  This is a fundamental economic practice that long predates

7   the asserted patent.  It is exactly the kind of abstract idea that the Supreme Court has repeatedly

8   found ineligible under the first step of the *Alice* analysis.

9          The claims fare no better under *Alice*'s second step.  The components recited in the claims

10   are conventional and generic electronics and network technologies, as the patent's specification

11   confirms.  The functions performed by these conventional technologies are also conventional, and

12   include basic operations like transmitting and comparing data.  They cannot, therefore, provide

13   the kind of "inventive concept" that might transform the claims into a patent eligible invention.

14          Perhaps recognizing its patent's questionable eligibility, the Plaintiff's complaint attempts

15   to paint the patent as directed to a payment process that creates security through the use of

16   "customer identifiers."  The patent's claims, however, do not reflect this purported improvement,

17   and are instead recite a system that operates with the very problems the Plaintiff contends the

18   patent sought to resolve.  And, in any event, the purported "customer identifiers" are themselves

19   an abstract idea – and one that is not limited to any particular shape, form, or implementation.

20   They cannot, therefore, provide the kind of inventive concept that might satisfy *Alice* step two.

21   ## II.      STATEMENT OF FACTS

22          ### A.       The Parties

23          Defendant Poynt Corporation ("Poynt") is a startup company and the world's first

24   developer of modern "smart" point-of-sale terminals.  In particular, Poynt has created an

25   innovative design that allows a payment terminal to run third-party applications without

26   compromising the security of simultaneously executing, industry-compliant payment software.

27

28

POYNT'S NOT. OF MOTION AND MOTION
TO DISMISS FOR PATENT INELIGIBILITY
CASE NO. 4:18-CV-6862-YGR

STS purports to be the assignee of U.S. Patent No. 9,684,893 (the "'893 patent"). The '893 patent listed Tara Chand Singhal, a prolific patent litigant, as its sole inventor.[1] STS appears to have no business beyond the filing of this lawsuit.

**B.    The Patent**

The '893 patent is titled "Apparatus And Method For A Wireless Point Of Sale Terminal." See Ex. A.[2] The patent explains that it is "directed to a payment card that can be used by a customer to perform a transaction with a merchant." *Id*. at 1:44-48. It also purports to be "directed to a method and apparatus for facilitating payment transactions to merchants using existing bankcards and bank accounts of a customer." *Id*. at 1:19-21. According to the patent's specification, it also seeks to address the inconvenience of carrying several "bankcards." *See id*. at 1:28-40. The patent further suggests that its alleged invention is helpful for addressing "security issues" with card payments. *Id*. at 1:35-37.

The claims of the '893 patent, however, do not contain any language relating to security improvements, nor do they provide any resolution to the inconveniences caused by carrying multiple cards. Rather, the claims recite a payment processing method in which various pieces of data about the customer, the merchant, and the transaction are forwarded to a card authorization network for approval. The '893 patent includes eight claims, including independent claims 1 and 5. Claim 5 is representative[3] and reads:

> 5. A method for a merchant point of sale (POS) transaction terminal, for acceptance of bankcard payment pursuant to a sales transaction, comprising the steps of:
>
> a. providing the merchant POS transaction terminal with an embedded mobile and portable wireless device with a built-in interface to a cellular wireless communication

---

[1] *See, e.g.*, *In Re Singhal*, No. 14-722, 2014 WL 7242806 (Dec. 16, 2014) (pro se petitioning the Supreme Court to overturn Federal Circuit cases following the *Alice* decision); Complaint for Injunctive Relief, *Singhal v. The Executive Branch of the United States Government, et al.*, No. 2:13-cv-07857-DDP-PJW (C.D. Cal. Oct. 24, 2013), ECF No. 1 (bringing pro se multiple causes of action concerning the enforceability of the AIA).

[2] All exhibit references refer to the Exhibits to the First Amended Complaint. ECF No. 24.

[3] Because the subject matter of a patent tends to be common across its claims, courts often make patent eligibility determinations by examining one or more representative claims. *See Content Extraction*, 776 F.3d at 1348 (explaining that use of a representative claim was proper because all the claims are "substantially similar and linked to the same abstract idea"); s*ee also Alice*, 573 U.S. at 224 (discussing the representative method claim).

network that communicates wirelessly via the wireless communication network to a remote payment system;

   b. receiving by the merchant POS transaction terminal input of a merchant identifier that identifies the merchant to the remote payment system, and wherein identifying by the merchant identifier a retail establishment, and generating by the merchant POS transaction terminal transaction specific data such as a transaction reference number, date and time, and a payment amount;

   c. receiving and accepting by the merchant POS transaction terminal input of bankcard data from a customer with a customer identifier for a payment by the bankcard for a sales transaction and assembling by the merchant POS transaction terminal a payment authorization request record with the merchant identifier, transaction specific data and the customer bankcard data and transmitting wirelessly by the merchant POS transaction terminal the payment authorization request record for the payment for the sales transaction to the remote payment system for forwarding via a gateway to a card authorization network; and

   d. receiving wirelessly by the merchant POS transaction terminal from the remote payment system a payment approval record for the sales transaction.

*Id.* at claim 5.

The method of claim 5 involves four steps.  First, in step "a" the terminal is provided with a cellular wireless connection to a remote payment system.  The specification makes it clear that this is a generic antenna.  *Id.* at 6:27-28.

Second, in step "b" the terminal receives an "identifier" that identifies the merchant.  The merchant identifier is totally nonspecific and may be "any combination of characters that identifies the merchant."[4]  *Id.* at 4:65-66.  The terminal also generates other conventional types of data including transaction references numbers, as well as amounts, dates and times of transactions.

Third, in step "c" the terminal receives bankcard data from a customer with a customer identifier.  The specification explains that the customer identifier is used to "anonymously identify and verify the customer" and can be "any number of characters that can be used to identify and verify the customer for gaining access to and interacting with the payment system."  *Id.* at 7:23-26, 7:32-35 (figure references omitted).  The payment terminal assembles a payment authorization request record with the merchant identifier, the transaction specific data, and the

---

[4] Claim 5 includes the phrase "and wherein identifying by the merchant identifier a retail establishment," which appears to include a grammatical error that makes it impossible to determine what is being claimed. *Id.* at 15:15-16.

1   customer bankcard data, and transmits that record over the wireless network to the remote

2   payment system to be forwarded to a card authorization network using a gateway.  The gateway

3   "is a computer system that routs [sic] the data for payment authorization to the bank card

4   authorization network, based on the bank routing number, usually the first 4 digits of the

5   bankcard number."  *Id.* at 3:48-51 (figure references omitted).  Gateways and card authorization

6   networks are both used in prior art card payment processing methods.  *See id.* at 3:55-57

7   (describing gateways and authorization networks as prior art).

8        Finally, the terminal wirelessly receives a payment approval method from the remote

9   payment system (presumably originating from the card authorization network).

10        The dependent claims add minor additional limitations.  Claim 6 adds a step whereby the

11   remote payment system verifies the contents of the authorization request before sending it to the

12   card authorization network.  Claim 7 adds that the payment terminal has a keypad, display, and

13   card reader.  Claim 8 adds that the payment terminal has a printer for printing receipts.  Claims 1

14   through 4 purport to be apparatus claims[5] but are otherwise substantively similar to claims 5

15   through 8.

16        In sum, the claims describe a conventional payment terminal, including a conventional

17   modem, that is used to submit payment-related information to a card authorization network in

18   order to obtain payment authorization.

19   ## III.  LEGAL STANDARDS

20        ### A.    Motion to Dismiss Standard

21        Whether a patent claims ineligible subject matter is a question of law based on underlying

22   fact and may therefore be resolved on a motion to dismiss.  *SAP Am., Inc. v. InvestPic, LLC*, 898

23   F.3d 1161, 1166 (Fed. Cir. 2018).  Indeed, courts routinely resolve patent eligibility questions at

24   the motion to dismiss stage.  *See id.* at 1163 (affirming judgment on the pleadings of patent

25   ineligibility); *Genetic Techs. Ltd. v. Merial L.L.C.*, 818 F.3d 1369, 1373 (Fed. Cir. 2016) ("We

26   _____

[5] This brief focuses on claim 5 in part because it appears that claim 1 suffers from a hybrid
27   claiming issue in that several of that its limitations are recited as method steps rather than
structural components.  Although this renders claims 1 through 4 indefinite, it appears that the
28   limitations of claims 1 through 4 are identical to claims 5 through 8 for all purposes of relevance
to the subject-matter-eligibility determination.

have repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion."). *See also Content Extraction & Trans. LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1349 (Fed. Cir. 2014) (granting motion to dismiss despite patentee's unsupported claims that claim construction was needed).

In considering allegations relating to patent subject matter eligibility, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" such as the information recited in the patent itself. *Cleveland Clinic Found. v. True Health Diagnostics LLC*, No. 2018-1218, 2019 U.S. App. LEXIS 9451, at *15 (Fed. Cir. Apr. 1, 2019) (citation omitted). When the allegations in the complaint do not establish the existence of a suitable inventive concept, dismissal is appropriate as a matter of law. *See ChargePoint, Inc. v. SemaConnect, Inc.*, No. 2018-1739, 2019 U.S. App. LEXIS 9191, at *28-32 (Fed. Cir. Mar. 28, 2019) (upholding dismissal of patent claims directed to a charging station outfitted with networking capability).

### B.  Patent Eligibility Standard

The Supreme Court has set forth a two-part test for determining if a patent recites patent ineligible subject matter under 35 U.S.C. § 101. *Alice*, 573 U.S. at 217.

### 1.  Step 1: Are the Claims Directed to an Abstract Idea?

First, the court must determine if the patented claims are "directed to" an abstract idea. *Id.* In *Alice*, for example, the Court determined that the patents in suit were directed to the abstract idea of intermediated settlement, an idea that was impermissibly abstract because it was "fundamental economic practice long prevalent in our system of commerce." *Id.* at 219.

In many cases, patents have been held abstract at step one when their claims recite using programmed software and conventional computer technologies to achieve something a human could otherwise achieve mentally. *See Content Extraction*, 776 F.3d at 1347 (ruling that software claims directed to "1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory" were abstract because "humans have always performed these functions."); *see also Mortg. Grader, Inc. v. First Choice Loan Servs. Inc.*, 811 F.3d 1314, 1324 (Fed. Cir. 2016) (finding claims directed to a software-based loan information exchange and approval process were abstract at step one because the steps could "be performed

1   by humans" without the aid of the automated software).  Accordingly, software claims that recite

2   basic data manipulation processes such as collecting information, analyzing information, and

3   presenting results of such analysis, are abstract.  *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d

4   1350, 1353-54 (Fed. Cir. 2016).

5          When examining computer implemented claims, "it is often helpful to ask whether the

6   claims are directed to 'an improvement in the functioning of a computer,' or merely 'adding

7   conventional computer components to well-known business practices.'"  *Affinity Labs of Texas,*

8   *LLC v. Amazon.com, Inc.*, 838 F.3d at 1270 (quoting *Enfish, LLC v. Microsoft Corp.*, 822 F.3d

9   1327, 1338 (Fed. Cir. 2016)).  Claims directed to "generalized steps to be performed on a

10  computer using conventional computer activity" are not patent eligible.  *Enfish,* 822 F.3d at 1338

11  (citing *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348-49 (Fed. Cir. 2015)).

12              **2.     Step 2: Do the Limitations Provide Any Inventive Concept?**

13         If the claim is directed to an abstract idea at step one, courts must then examine the

14  additional limitations of the claim, both individually and as an ordered combination, and ask

15  whether they provide any "inventive concept" that transforms the claim into something

16  "significantly more" than a patent on the abstract idea.  *Alice*, 573 U.S. at 217-18.  The Supreme

17  Court has explained that an inventive concept may be found when the limitations of a claim

18  "when viewed as a whole," provide something "significant beyond the sum of their parts taken

19  separately."  *See Mayo Collaborative Servs. v. Prometheus Labs., Inc.,* 566 U.S. 66, 79-80

20  (2012).  To save an otherwise-abstract claim, such an inventive concept must be recited *in the*

21  *claim itself* as opposed to the patent's specification.  *Two-Way Media Ltd v. Comcast Cable*

22  *Comm., LLC,* 874 F.3d 1329, 1338 (Fed. Cir. 2017) (citing *RecogniCorp, LLC v. Nintendo Co.*,

23  855 F.3d 1322, 1327 (Fed. Cir. 2017)).  Implementing an abstract process through the use of

24  generic and conventional computer components and functionality does not provide any inventive

25  concept.  *Alice*, 573 U.S. at 223; *Blue Spike, LLC v. Google Inc.*, No. 14-cv-01650-YGR, 2015

26  U.S. Dist. LEXIS 119382, at *18 (N.D. Cal. Sep. 8, 2015) ("Merely adding limitations involving

27  the use of general purpose computer components to an otherwise abstract concept does not

28  constitute an inventive concept sufficient to save a claim from invalidity.")

POYNT'S NOT. OF MOTION AND MOTION
TO DISMISS FOR PATENT INELIGIBILITY
CASE NO. 4:18-CV-6862-YGR

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.     ARGUMENT

### A.     The Claims of the '893 Patent Are Directed to the Abstract Idea of Authorizing Card Payments.

At step one, the '893 patent's claims are directed to the abstract idea of authorizing card payments.  Looking at representative claim 5 as an example, its "character as a whole" is transmitting information about the merchant, customer and transaction to a card-authorization network so that the payment can be approved.  *Internet Patents Corp.*, 790 F.3d at 1346.

Authorizing card payments is an abstract idea because it is a "fundamental economic practice long prevalent in our system of commerce."  *Alice*, 573 U.S. at 219.  The Federal Circuit has confirmed that claims directed to similar concepts were abstract under step one.  In *Credit Acceptance Corp. v. Westlake Servs.*, 859 F.3d 1044, 1054 (Fed. Cir. 2017), the court found that claims relating to a similar financial transaction were abstract.  The claims there involved "maintaining a database of information about the items in a dealer's inventory, obtaining financial information about a customer from a user, combining these two sources of information to create a financing package for each of the inventoried items, and presenting the financing packages to the user."  *Id*.  The Federal Circuit explained that the claims were "directed to the abstract idea of processing an application for financing a purchase"—an idea it acknowledged to be "a fundamental economic practice."  *Id*. (citations omitted).  The claims in the '893 patent recite a similar method for processing data to facilitate a financial transaction and are likewise abstract.

As another example, in *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1378 (Fed. Cir. 2017), the Federal Circuit affirmed an award of fees against a patentee who had asserted patent claims that were found invalid under 35 U.S.C. § 101.  The claims at issue related to "a method of purchasing goods at a local point-of-sale system from a remote seller."  *Id*. at 1374.  One of the asserted claims, for example, read:

> 25. A method for a remote seller to process a payment for the sale of goods, comprising the steps of:
>
> receiving a remote order for a purchase of goods from a customer;
>
> generating a code and a purchase price for said remote order;

1          transmitting said code and said purchase price to the customer;

2          providing order data for use by a point-of-sale system of a local seller in
           receiving a payment for said remote order;

3

4          receiving payment data confirming said payment has been received at said
           point-of-sale system of said local seller;

5          initiating, responsive to said payment data, a shipment of said goods; and

6          receiving a payment for said remote order from said local seller.

7   *Id.* The Federal Circuit confirmed that the claims were "manifestly directed to an abstract

8   idea" of "local processing of payments for remotely purchased goods" (citations omitted).

9   *Id.* at 1378. "The idea that a customer may pay for items ordered from a remote seller at a

10  third-party's local establishment is the type of fundamental business practice that, when

11  implemented using generic computer technology, is not patent-eligible." The court

12  therefore affirmed the award of attorneys' fees, noting that the patentees attempted

13  arguments for eligibility were meritless in light of the clear weakness of their case. *Id.* at

14  1378-80.

15          Here, STS's patent claims are likewise "manifestly directed to an abstract idea."

16  *Id.* at 1378. The claims of the '893 patent recite a method for processing payments in

17  connection with purchases—an economic concept indistinguishable from the idea struck

18  down in *Inventor Holdings*.

19          The claims of the '893 patent are also abstract because they recite nothing more

20  than basic data manipulation processes. *See Smart Sys. Innovations, LLC v. Chicago

21  Transit Auth.,* 873 F.3d 1364, 1371, 1372 (Fed. Cir. 2017) (finding claims "involv[ing]

22  acquiring identification data from a bankcard, using the data to verify the validity of the

23  bankcard, and denying access to a transit system if the bankcard is invalid" to be "directed

24  to the collection, storage, and recognition of data"). To accomplish the payment

25  authorization process recited in the claims of the '893 patent, the patent only requires

26  basic computer steps involving generating transaction data, accepting identifiers, and

27  transmitting and receiving data. These are precisely the "generalized steps to be

28  performed on a computer using conventional computer activity" that render patent claims

ineligible.  *Two-Way Media*, 874 F.3d at 1337; *see also Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1371 (Fed. Cir. 2015) (explaining that claims requiring only data entry, organization and transmission "do not confer patent eligibility"); *In Re TLI Comm. LLC Patent Lit.*, 823 F.3d 607, 613 (Fed. Cir. 2016) (claims involving organizing image data and delivering media content were found abstract).  Thus, the claims of the '893 patent are both directed to a fundamental economic practice and an abstract data manipulation process.

**B.    The Claims of the '893 Patent Lack Any Inventive Concept.**

Looking at the limitations of claim 5, there is nothing in them that could constitute an "inventive concept."  The components utilized in the payment processing method are all generic and conventional, and STS does not allege otherwise in its First Amended Complaint.

- The claimed "point of sale (POS) transaction terminal" is described as being a "data input device" with a screen, keypad and card reader, just like the payment terminals we have encountered in stores for decades.  Ex. A, 6:26-30.
- The claimed "interface to a cellular wireless communication network" is a conventional antenna.  *Id*. at 6:27.
- The claimed "remote payment system" is described as including a storage device, operating system, payment program, and a "conventional CPU."  *Id*. at 3:5-15.  In other words, it is a generic computer utilizing well-known components.
- The "gateway" and "card authorization network" involved in the claims refer to simple pre-known networks used by credit card companies for decades.  Indeed, the '893 patent admits that "[t]he gateway 23 and [card authorization] network 21 can be similar to existing prior art devices used to process existing bankcards."  *Id*. at 3:55-57.
- The dependent claims add equally generic components such as a screen, keypad and printer.

In sum, the claims recite a "handful of generic computer components configured to implement" the abstract idea of authorizing a credit card payment, and are not inventive.  *Alice*,

1  573 U.S. at 210.

2          The data types recited in the claim are equally uninventive.  The claim requires customer

3  identifiers and merchant identifiers, but courts have repeatedly held that using data as an identifier

4  does not provide an inventive concept.  *See Dropbox, Inc. v. Synchronoss Techs., Inc.*, No. 18-cv-

5  03685-LHK, 2019 WL 1170776, at *15 (N.D. Cal. Mar. 13, 2019) (finding requirement of

6  "generates a single session ID" "can hardly be considered inventive enough to transform an

7  abstract idea into a patentable one" (citing *Content Extraction*, 776 F.3d at 1347)); *Twilio, Inc. v.

8  Telesign Corp.*, 249 F. Supp. 3d 1123, 1159-62 (N.D. Cal. 2017) (finding claim involving "an

9  account identifier" did not pass *Alice* step two).  And the identifier data in the claim is used as

10  part of a simple verification process (including the process recited in dependent claims 2 and 6),

11  which likewise is uninventive.  *See Smart Sys. Innovations*, 873 F.3d at 1373-75 (finding claims

12  requiring, *inter alia*, determining whether a currently presented bankcard was in a stored list of

13  bankcards did not contain an inventive concept); *Twilio*, 249 F. Supp. 3d at 1134, 1159-62

14  (finding claim that involved "determining whether the account identifier is a valid account

15  identifier" was not inventive).

16          Looking at the claim limitations as an ordered combination does not change the result.  As

17  explained above, the claim as a whole recites a basic credit card authorization transmission, and

18  does so using nothing more than generic electronics functioning in a conventional manner.  There

19  is nothing novel or unconventional in how the generic components used by the process are

20  arranged, and there is no technological improvement that results from their particular use or

21  combination.  *See Mayo,* 566 U.S. at 79-80 (finding no inventive concept in claim limitation that,

22  "when viewed as a whole, add nothing significant beyond the sum of their parts taken

23  separately").

24          In its First Amended Complaint, STS suggests that the '893 patent is inventive because it

25  provides security benefits in credit card transactions.  Specifically, the First Amended Complaint

26  alleges that the claimed "customer identifier" is "based on the customer's private data … but does

27  not include any private identifying information when transmitted to the merchant."  Dkt. No. 24

28  ¶ 13.  Accordingly, the use of the customer identifier somehow "prevents the customer's private

1    data from being shared with merchants." *Id*.

2        These allegations refer to no inventive concept in the claims.[6]  Indeed, none of the

3    limitations in the claims reflect this alleged benefit of concealing a cardholder's private data from

4    the merchant.  *See Two-Way Media*, 874 F.3d at 1338 (explaining that the inventive concept must

5    be reflected in the claims, and rejecting proposed inventive concepts that were not).  The claims

6    only requires inputting a "bankcard data from a customer with a customer identifier" into the

7    payment terminal and sending an authorization request that includes, among other things, "the

8    customer bankcard data."  *See* Ex. A. claim 5.  The claim does not describe how the customer

9    identifier is used or include any limitations suggesting that the identifier conceals information

10   from the merchant.  Put another way, nothing in the claims suggests that the private cardholder

11   data that the alleged invention sought to protect is actually protected.

12       And, even if the concept of replacing other customer data with a  "customer identifier" did

13   appear in the claims, it would still not satisfy the second prong of the *Alice* analysis.  At best, the

14   "customer identifier" described in the specification (but <u>not</u> in the claims) is a basic example of

15   encoding, an abstract idea that far predates computers.  *See RecogniCorp*, 855 F.3d at 1326

16   (finding that claims were directed to "standard encoding and decoding, an abstract concept long

17   utilized to transmit information").  In *RecogniCorp*, the Federal Circuit considered a patent

18   directed to using an encoded number to represent combinations of facial feature images forming a

19   face.  *Id*.  The Federal Circuit explained that the claims were directed to "standard encoding and

20   decoding, an abstract concept long utilized to transmit information."  *Id*.  The "customer

21   identifier" of the specification simply encodes bankcard information, and is no less abstract than

22   the encoding scheme in *RecogniCorp*.

23       Because the "customer identifier" "adds nothing outside the abstract realm," it cannot

24   provide an inventive concept of the kind that might save the claims.  *SAP*, 898 F.3d at 1169

25   (dismissing alleged inventive concepts when they were "themselves abstract"); *see also*

26

27   _____

[6] Some decisions have analyzed whether a patent recites a technical improvement at step one
instead of step two.  *See, e.g., Enfish*, 822 F.3d at 1335.  For purposes of this brief, the same

28   arguments apply either way.  The reasons discussed here also pertain to why claims of the '893
patent are not "directed to" a specific computer improvement under step one.

1    *RecogniCorp*, 855 F.3d at 1328 (holding that adding an abstract mathematic formula to an already

2    abstract claim does not provide an inventive concept); *Intellectual Ventures I*, 792 F.3d at 1368

3    (ruling that budget calculations could not provide an inventive concept because they were abstract

4    and "could still be made using a pencil and paper").

5            Furthermore, contrary to the attorney argument in STS's complaint, this so-called solution

6    is not "a technical solution to a technical problem."  Dkt. No. 24 ¶ 14; *Pareto v. FDIC*, 139 F.3d

7    696, 699 (9th Cir. 1998) ("[C]onclusory allegations of law and unwarranted inferences are not

8    sufficient to defeat a motion to dismiss.").  As noted above, the Federal Circuit has already

9    recognized that "standard encoding and decoding" long predated the use of computers, and is

10   therefore not a "technical" solution.  *See RecogniCorp*, 855 F.3d at 1326.  Nor is the fact that

11   private information can be exposed to others in transit a uniquely technical problem – indeed it is

12   one that exists in all forms of communication, which is why Captain Crunch used to come with

13   secret decoder rings.  *See, e.g., Personalized Media Commc'ns., LLC v. Amazon.com, Inc.*, 161 F.

14   Supp. 3d 325, 333 (D. Del. 2015) ("Cryptography has been used to protect information since

15   ancient Mesopotamia.").

16           Nor does using an encoded "customer identifier" to process credit card payments result in

17   any "specific improvement to computer functionality."  *In Re TLI Comm.*, 823 F.3d at 612.  The

18   generic payment terminal, networks, and computers involved in the claimed process continue to

19   perform the same basic data storage, comparison, and transmission functions that they always

20   have.  For this reason, the Federal Circuit has already held that utilizing such basic encoding does

21   not "improve[] the functioning of a computer" but instead is "a process that qualifies as an

22   abstract idea for which computers are invoked merely as a tool" (citations omitted).

23   *RecogniCorp*, 855 F.3d at 1327.  Nor do the claims recite any improved method of encoding.

24   Under the claims, any code will suffice.  Thus, even if the claims *did* recite the use of an encoded

25   "customer identifier" to conceal private cardholder information, they would *still* be abstract and

26   uninventive under the law.

27           The '893 patent claims the fundamental economic practice of processing credit card

28   authorization requests, and implements that idea using nothing but basic and conventional

POYNT'S NOT. OF MOTION AND MOTION
TO DISMISS FOR PATENT INELIGIBILITY
CASE NO. 4:18-CV-6862-YGR

components and functionalities.  The claims do not reflect any technical improvement, nor do they include any other inventive concept.  The claims, as such, recite patent ineligible subject matter and STS's case asserting this flawed patent should therefore be dismissed.

**V.      CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss should be granted.


Dated: May 3, 2019                            ORRICK, HERRINGTON & SUTCLIFFE LLP


By:  */s/ Jacob M. Heath*
                                              CLEMENT SETH ROBERTS
                                              JACOB M. HEATH
                                              WILL MELEHANI
                                              Attorneys for Defendant Poynt Corporation