MARK B. CHASSMAN (CA Bar No. 119619)
mchassman@chassmanseelig.com
CHASSMAN & SEELIG LLP
11766 Wilshire Boulevard, Suite 270
Los Angeles, CA 90025
Telephone: (310) 929-7192
Fax: (310) 929-7627

SARAH A. PFEIFFER (CA Bar No. 278205)
sap@msf-law.com
SETH H. OSTROW (*pro hac vice*)
sho@msf-law.com
MEISTER SEELIG & FEIN LLP
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Fax: (646) 539-3649

*Attorneys for Plaintiff Sales Transaction
Systems, LLC.*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SALES TRANSACTION SYSTEMS, LLC, | Case No. 4:18-cv-6862-YGR |
| Plaintiff, | **PLAINTIFF SALES TRANSACTION SYSTEMS, LLC'S OPPOSITION TO DEFENDANT'S SECOND MOTION TO DISMISS (D.I. 31)** |
| vs. | |
| POYNT CO., | Noticed Hearing Date: June 11, 2019 |
| Defendant. | Time:              2:00 pm |
| | Courtroom:    1, 4th Floor |
| | Date Complaint Filed: No 13, 2018 |
| | Trial Date: Not Set |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................................ ii

I.    INTRODUCTION ..................................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................................ 2

      A.  Procedural History ....................................................................................... 2

      B.  The '893 Patent ............................................................................................ 3

III.  LEGAL STANDARD .............................................................................................. 5

      A.  Motions Under Rule 12 ................................................................................ 5

      B.  Section 101 at the Pleading Stage ............................................................... 5

IV.   ARGUMENT ............................................................................................................ 7

      A.  The Motion Should be Denied Under Rule 12(g)(2) ................................... 7

      B.  The Claims Are Patent Eligible ................................................................... 9

            1.  The Claims Are Directed to Physical Devices, Not Abstract Ideas ........... 9

            2.  The Claims Are Not Abstract at Step Two ................................................ 14

                  a)  The claims contain an inventive concept ........................................ 14

                  b)  Questions of fact preclude judgment on the pleadings ................. 17

V.    CONCLUSION ....................................................................................................... 19

1

# **TABLE OF AUTHORITIES**

2

3

## **CASES**

4   *Aatrix Software, Inc. v. Green Shades Software, Inc.*,
        890 F.3d 1354 (Fed. Cir. 2018) ........................................................................ 5, 6, 17

5
    *Alice Corp. Pty. Ltd. v. CLS Bank International*,
6        134 S. Ct. 2347 (2014) ........................................................................................ Passim

7   *Amdocs (Israel) Limited v. Opennet Telecom, Inc.*,
        841 F3d 1288 (Fed. Cir. 2016) ........................................................................ 12

8   *Apple Inc. v. Pepper*,
        138 S. Ct. 2647, 201 L. Ed. 2d 1049 (2018) ...................................................... 7
9
    *Avago Techs. Gen. IP (Singapore) PTE Ltd. v. Asustek Computer, Inc.*,
10       No. 15-CV-04525-EMC, 2016 WL 1623920 (N.D. Cal. Apr. 25, 2016) ................. 11

11  *Avocent Huntsville, LLC v. ZPE Systems, Inc.*,
        No 3:17-cv-04319-WHO (N.D. Cal. Mar. 21, 2018) .......................................... 10
12
    *Bancorp Servs., LLC v. Sun Life Assur. Co. of Can.* (U.S.),
13       687 F.3d 1266 (Fed. Cir. 2012) ........................................................................ 15

14  *Bascom Global Internet Services, Inc. v. AT&T Mobility LLC*,
        827 F.3d 1341 (Fed. Cir. 2016) ........................................................................ 12
15
    *Baxter Int'l, Inc. v. Carefusion Corp.*,
16       No. 15-cv-9986, 2016 WL 2770787 (N.D. Ill. May 13, 2016) ........................... 10

17  *Berkheimer v. HP Inc.*
        881 F.3d 1360 (Fed. Cir. 2018) ........................................................................ 5, 6

18  *Cleveland Clinic Found. v. True Health Diagnostics LLC*,
        760 F. App'x 1013 (Fed. Cir. 2019) .................................................................. 18
19
    *Core Wireless Licensing S.A.R.L. v. LG Elecs., Inc.*,
20       880 F.3d 1356 (Fed. Cir. 2018) ........................................................................ 5, 17

21  *Credit Acceptance Corp. v. Westlake Servs.*
        859 F.3d 1044 (Fed. Cir. 2017) ........................................................................ 13

22  *Data Engine Techs. LLC v. Google LLC*,
        906 F.3d 999 (Fed. Cir. 2018) .......................................................................... 5, 6, 10
23
    *DDR Holdings, LLC v. Hotels.com, L.P.*,
24       773 F.3d 1245 (Fed. Cir. 2014) ........................................................................ Passim

25  *Dropbox, Inc. v. Synchronoss Techs., Inc.*,
        No. 18-CV-03685-LHK, 2019 WL 1170776 (N.D. Cal. Mar. 13, 2019) .............. 17
26
    *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327 (Fed. Cir. 2016) ............................. 6, 11, 12
27
    *F.T.C. v. Wellness Support Network, Inc.*,
28       No. 10-cv-048792011 WL 4026867 (N.D. Cal. Sept. 12, 2011) ......................... 7, 9

*Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings,*
    No. 12-CV-1736-LPS-CJB, 2014 WL 4379587 (D. Del. September 3, 2014) ......................... 16

*Harrell v. City of Gilroy,*
    No. 17-cv-05204-LHK, 2019 WL 452039 (N.D. Cal. Feb. 5, 2019) ...................................... 7, 8

*Illumina, Inc. v. Natera, Inc.,*
    No. 18-CV-01662-SI, 2018 WL 3126383 (N.D. Cal. June 26, 2018) ....................................... 17

*Immersion Corp. v. Fitbit, Inc.,*
    313 F. Supp. 3d 1005 (N.D. Cal. Mar. 5, 2018) ........................................................................... 9

*In re Apple iPhone Antitrust Litigation,*
    846 F.3d 313 (9th Cir. 2017) ....................................................................................................... 7

*In re Packaged Seafood Products Antitrust Litigation,*
    277 F. Supp. 3d 1167 (S.D. Cal. 2017) ....................................................................................... 8

*Internet Patents Corp. v. Active Network, Inc.,*
    790 F.3d 1343 (Fed. Cir. 2015) ................................................................................................. 13

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.,*
    876 F.3d 1372 (Fed. Cir. 2017) ................................................................................................. 13

*Ironworks Patents, LLC v. Apple Inc.,*
    No. CV 17-1399-RGA, 2018 WL 2944475 (D. Del. June 12, 2018) ....................................... 10

*LifeNet Health v. LifeCell Corp.,*
    837 F.3d 1316 (Fed. Cir. 2016) ................................................................................................. 10

*Lipitor Antitrust Litigation,*
    No. 3:12-cv-2389, 2013 WL 4780496 (D.N.J. Sept. 5, 2013) ............................................. 5, 10

*Manzarek v. St. Paul Fire & Marine Ins. Co.,*
    519 F.3d 1025 (9th Cir. 2008) ..................................................................................................... 5

*Mayo Collaborative Services. v. Prometheus Labs.,*
    132 S. Ct. 1289 (2012) ..................................................................................................... 6, 11, 14

*McRO, Inc. v. Bandai Namco Games America Inc.,*
    837 F.3d 1299 (Fed Cir. 2016) ............................................................................................ 11, 14

*Network Congestion Solutions, LLC v. U.S. Cellular Corp.,*
    170 F. Supp. 3d 695 (D. Del. 2016) .......................................................................................... 14

*Ojmar US, LLC v. Security People, Inc.,*
    No. 16-cv-04948-HSG, 2017 WL 5495912 (N.D. Cal. Nov. 16, 2017) ..................................... 8

*Polaris Innovations Ltd. v. Kingston Tech. Co.,*
    223 F. Supp. 3d 1026 (C.D. Cal. 2016) ..................................................................................... 10

*POWERbahn, LLC v. Found. Fitness LLC,*
    No. 3:15-cv-00327-MMD-WGC, 2016 WL 4318978 (D. Nev. Aug. 11, 2016) ...................... 10

*Pure Data Sys., LLC v. Ubisoft, Inc.,*
    No. 18-CV-00852-JCS, 2018 WL 3417530 (N.D. Cal. July 13, 2018) ..................................... 17

*RecogniCorp, LLC v. Nintendo Co.,*
    855 F.3d 1322 (Fed. Cir. 2017) ................................................................................................. 16

iii

*Romo v. Wells Fargo Bank, N.A.*,
    No. 15-cv-03708-EMC, 2016 WL 3523779 (N.D. Cal. June 28, 2016) .................................... 8

*Smart Sys. Innovations LLC v. Chicago Transit Authority*,
    873 F.3d 1364 ............................................................................................................................... 13

*Supercell Oy v. GREE, Inc.*,
    No. 17-CV-05556-YGR, 2018 WL 1609584 (N.D. Cal. Apr. 3, 2018)...................................... 11

*Symantec Corp. v. Zscaler, Inc.*,
    No. 17-CV-04426-JST, 2018 WL 3539269 (N.D. Cal. July 23, 2018).................................... 17

*Synchronoss Technologies, Inc. v. Hyperlync Technologies, Inc.*,
    No. 15-CV-2845 (MLC), 2016 WL 868920 (D. N.J. Mar. 7, 2016)......................................... 17

*Thales Visionix Inc. v. United States*,
    850 F.3d 1343 (Fed. Cir. 2017) .................................................................................................. 9

*TMI Solutions LLC v. Bath & Body Works*,
    No. 17-965-LPS-CJB, 2018 WL 4660370 (D. Del. Sept. 28, 2018)......................................... 17

*Trading Techs. Int'l, Inc. v. CQG, Inc.*,
    675 Fed. Appx. 1001 (Fed. Cir. 2017) ...................................................................................... 12

*Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*,
    617 F.3d 1296 (Fed. Cir. 2010) ................................................................................................. 18

*Visual Memory LLC v. NVIDIA Corp.*,
    867 F.3d 1253 (Fed. Cir. 2017) ................................................................................................. 13

**STATUTES**

35 U.S.C. §101 ...........................................................................................................................Passim

**RULES**

Fed. R. Civ. P. 15(a)(1)(B) ............................................................................................................. 2

Fed. R. Civ. P. 12(g)(2) ...........................................................................................................Passim

Fed. R. Civ. P. 12(b)(6) ...........................................................................................................Passim

N.D. Cal. L. Rule 7-2(B) ................................................................................................................ 8

1       Plaintiff Sales Transaction Systems, LLC ("STS") hereby opposes Defendant Poynt Co.'s

2   ("Defendant" or "Poynt") Rule 12(b)(6) Motion to Dismiss for Patent Ineligibility Under 35 U.S.C.

3   § 101.

4   **I.    INTRODUCTION**

5       Defendant takes another bite at the Rule 12 apple in its second Motion to Dismiss (D.I. 31,

6   "Second MTD"), a tactic prohibited by Rule 12(g)(2).  The Second MTD also fails on the merits.

7   U.S. Patent No. 9,684,893 (the "'893 Patent"), asserted against Defendant in both the original

8   Complaint (D.I. 1) and First Amended Complaint (D.I. 24), includes two independent claims: an

9   apparatus claim for a mobile point of sales (POS) terminal and a method claim for using that device.

10  Claims for a physical device, particularly a device that is not a generic "system" or computer, are not

11  directed to abstract ideas—they are directed to machines.  35 U.S.C. § 101 explicitly provides that

12  whoever invents a new and useful machine may obtain a patent, and such devices are concrete,

13  physical items, not ideas.  Defendant attempts to obscure this clear rule by asserting that the method

14  claim is representative, avoiding a discussion of the apparatus claim.  Further, Defendant describes

15  the claims at an improperly high level—a strategy Defendant has challenged in defending its own

16  patents, recognizing that essentially anything *could* be described in such a way to make it appear

17  abstract.  The Federal Circuit has cautioned courts against this approach.

18      Indeed, a review of the claims confirm they are not directed to abstract ideas or methods.  The

19  claims are directed to a technological problem—privacy and security in the Internet age—and offer

20  a technological solution—using anonymized data with mobile point of sales terminals to improve

21  the security of transactions conducted using mobile and wireless devices.

22      There is no need to proceed to evaluate whether the claims contain an inventive concept, the

23  second step analyzed only if a claim is found to be abstract.  But analysis under this step further

24  demonstrates that the claims are not abstract.  The '893 Patent claims are tied to a specific physical

25  device, implemented in a way that is tailored to solve the security problems raised by conducting

26  data-heavy transactions in the evolving wireless world.  The claims are so narrowly tailored to these

27  mobile point of sales terminals and manner of achieving security that there is no risk of preemption

28  of the idea of payment transactions, as Defendant attempts to argue.

1    Finally, STS has pled sufficient facts to show questions of fact that preclude ruling in favor

2    of Defendant's motion at this time.   As noted, the '893 Patent specification describes a technological

3    problem and the claims include limitations to address that problem.   The '893 Patent already

4    overcame a Section 101 rejection, issued after the *Alice* decision, which the Patent Office withdrew.

5    Further, Defendant's arguments that the claims are abstract directly contradict positions that

6    Defendant has taken before the Patent Office in trying to obtain its own patents.   Whether the

7    technique implemented is inventive, and not routine or conventional, is one of fact that cannot be

8    resolved in view of the statements in the specification and the exhibits to the First Amended

9    Complaint.   Further, Defendant argued that a specific term fails to provide an inventive concept,

10   injecting the need for this Court to conduct claim construction.   STS has proposed a construction for

11   this term that resolves this issue in favor of patentability.   Thus, if Defendant argues that this

12   construction is improper, claim construction is required before this Court can evaluate patent

13   eligibility.

14   Accordingly, STS respectfully requests the Court deny Defendant's untimely motion and find

15   that the '893 Patent claims eligible subject matter under 35 U.S.C. §101.

16   **II.        STATEMENT OF FACTS**

17   **A.        Procedural History**

18   On November 13, 2018, STS filed the Complaint (D.I. 1), alleging that Defendant

19   infringed, directly and indirectly, the '893 Patent.   STS also alleged willful infringement.   On

20   January 25, 2019, Defendant signed a waiver of service, rendering its response to the Complaint

21   due 60 days from January 22, 2019.   On March 25, 2019, Defendant filed a first Rule 12(b)(6)

22   Motion to Dismiss (the "First MTD"), an eight-page motion alleging deficiencies with regard only

23   to Poynt's allegations of indirect infringement and willfulness.   (D.I. 17.)   The First MTD did not

24   identify any other alleged issues with the Complaint.

25   On April 12, 2019, STS filed the First Amended Complaint, pursuant to Fed. R. Civ. P.

26   15(a)(1)(B), addressing the alleged deficiencies with regard to indirect infringement and

27   willfulness, but did not otherwise change the allegations against Defendant.   (D.I. 24.)   In

28   particular, STS asserted the same patent (the '893 Patent) and attached the same exemplary claim

2

1    chart to the First Amended Complaint as included in the original Complaint. (*Compare* D.I. 1 to

2    D.I. 24.)  On April 25, 2019, Defendant filed a joint stipulation to extend the deadline for

3    Defendant to respond to the First Amended Complaint. (D.I. 29.)  On May 3, 2019, Defendant

4    filed its second Rule 12(b)(6) Motion to Dismiss (the "Second MTD"), a thirteen-page motion that

5    raised, for the first time, the assertion that all claims of the '893 Patent claims were directed to

6    ineligible subject matter. (D.I. 31.)

7    **B.   The '893 Patent**

8    As detailed in the First Amended Complaint (and the original Complaint), the '893 Patent

9    issued on June 20, 2017. (D.I. 24 at ¶ 6 and Ex. A.)  The '893 Patent includes eight claims, two of

10   which are independent. Claim 1 is directed to a mobile point of sales terminal, and claim 5 is directed

11   to a method of using a mobile point of sales terminal.  The '893 Patent identifies and sets out to solve

12   several problems relating to conducting secure transactions using wireless devices.  For example,

13   people often carry multiple cards that use magnetic stripes to conduct credit or bank card transactions.

14   ('893 Patent (D.I. 24 at Ex. A) at 1:28-40.)  Point of sales terminal devices have changing security

15   issues, and the banking industry cannot always keep up with these challenges. (*Id.*)  In particular,

16   people frequently pay with credit and bank cards, but standard transactions share the customer's

17   private data, such as card number, name, and/or expiration date with the merchant, which the

18   merchant may store. (*See, e.g., id.* at 1:28-52, 2:12-20.)  Further, by transmitting that data wirelessly

19   and storing it electronically, such devices are subject to security risks from hacking and fraud.

20   To address these problems, the '893 Patent proposes a technological solution to these

21   problems, including a point of sales terminal that uses a customer identifier to anonymously identify

22   the customer's private data, such as bank card data, but does not itself include such private data.

23   (*See, e.g., id.* at 7:29-31.)  This prevents the customer's private data from being shared with

24   merchants, but still allows card transactions to take place using the traditional financial structure.

25   (*Id.* at 1:49-50.)  The customer identifier can be used with mobile point of sales terminals that

26   wirelessly transmit data to complete financial transactions.  This improves flexibility for customers

27   and merchants while protecting customers from exposing their private data.

28

3

The '893 Patent includes two independent claims. Claim 1 serves as a better representative claim because it is directed to the physical apparatus itself, while claim 5 is directed to a method of using that device. The fact that claim 1 is directed to a physical device, and that claim 5 is directed to a method of using that physical device, is relevant to Section 101 analysis, as detailed below. Defendant's motive to allege that claim 5 is representative is apparent when conducting that analysis—claims to physical devices are plainly not directed to abstract ideas. Defendant attempts to bury this fact by hiding behind a method claim, though that argument fails as well, since the method is tied directly to the physical device. Claim 1 is shown below.

> 1. A merchant point of sale (POS) transaction terminal, for acceptance of bankcard payment pursuant to a sales transaction, comprising:
>
> > a. the merchant POS transaction terminal is a mobile and portable wireless device with a built-in interface to a cellular wireless communication network that communicates wirelessly via the wireless communication network to a remote payment system;
> >
> > b. the merchant POS transaction terminal receives input of a merchant identifier that identifies the merchant to the remote payment system, and wherein the merchant identifier identifies a retail establishment, and generates transaction specific data such as a transaction reference number, date and time, and a payment amount;
> >
> > c. the merchant POS transaction terminal receives and accepts input of bankcard data from a customer with a customer identifier, for a payment by the bankcard for a sales transaction and assembles a payment authorization request record with the merchant identifier, the transaction specific data and the customer bankcard data and wirelessly transmits the payment authorization request record from the merchant POS transaction terminal for the payment for the sales transaction to the remote payment system for forwarding via a gateway to a card authorization network; and
> >
> > d. the merchant POS transaction terminal then wirelessly receives from the remote payment system a payment approval record for the sales transaction.

Claims 1 and 5 include language relating specifically to these security mechanisms solving the problems identified in the '893 Patent, including the "merchant identifier" and "customer identifier", along with a "payment authorization request record". Claim 5 is directed to a method of using the merchant point of sales terminal. Dependent claims 2 and 6 relate to further verification requirements, claims 3 and 7 relate to a keypad limitation on the physical device (and are not asserted

8474/1/7636143.v1

1  against Defendant), and claims 4 and 8 relate to including a further physical device, a printer for

2  printing sales receipts.

3  **III.    LEGAL STANDARDS**

4      **A.    Motions Under Rule 12**

5          Under Rule 12(b)(6), the moving party must show that the pleadings fail to state a claim

6  upon which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  A party that makes a Rule 12(b)(6)

7  motion, however, "must not make another motion under this rule raising a defense or objection that

8  was available to the party but omitted from its earlier motion."  Fed R. Civ. P. 12(g)(2).

9          If reaching the merits of a Rule 12(b)(6) motions, the Court must accept all well-pled facts

10  as true and must consider all facts in the light most favorable to the non-moving party.  *Manzarek*

11  *v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  When considering

12  whether a pleading is sufficient, it is proper for a district court to consider the pleading itself and all

13  attachments, along with matters of properly subject to judicial notice.  *Id.* at 1030-1031.  Patents

14  and their file histories are considered matters of public record suitable for judicial notice.  *See, e.g.,*

15  *In re Lipitor Antitrust Litigation*, No. 3:12-cv-2389, 2013 WL 4780496, at *1 (D.N.J. Sept. 5,

16  2013); *see also Data Engine Techs. LLC v. Google LLC*, 906 F.3d 999, 1008 n.2 (Fed. Cir. 2018).

17      **B.    Section 101 at the Pleading Stage**

18          "A patent is presumed valid, and the burden of establishing invalidity of a claim rests on the

19  party asserting invalidity by clear and convincing evidence."  *Core Wireless Licensing S.A.R.L. v.*

20  *LG Elecs., Inc.*, 880 F.3d 1356, 1364 (Fed. Cir. 2018).  The Federal Circuit has advised that in

21  considering a claim's patent eligibility based on 35 U.S.C. § 101, a genuine issue of fact regarding

22  whether the claims "perform well-understood, routine, and conventional activities to a skilled

23  artisan" would render a determination improper even at summary judgment.  *Berkheimer v. HP*

24  *Inc.*  881 F.3d 1360, 1370 (Fed. Cir. 2018).  Given the significantly lower standard for pleading

25  under Rule 12(b)(6), a question of fact on this issue also precludes dismissal of the complaint.  *See,*

26  *e.g., Aatrix Software, Inc. v. Green Shades Software, Inc.*, 890 F.3d 1354, 1357 (Fed. Cir. 2018).

27  Thus, although the Federal Circuit has acknowledged that it may sometimes be appropriate to rule

28

1    on Section 101 issues of patentability at the pleading stage, it has recently advised that it may be

2    premature. *Id.*

3        Section 101 provides that anyone who invents a "new and useful process, machine,

4    manufacture, or composition of matter," or an improvement thereof, may obtain a patent.  35

5    U.S.C. § 101.  "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice*

6    *Corp. Pty. Ltd. v. CLS Bank International*, 134 S. Ct. 2347, 2354 (2014).  The U.S. Supreme Court,

7    however, has explained that "[a]t some level, all inventions embody, use, reflect, rest upon, or

8    apply laws of nature, natural phenomena, or abstract ideas." *Id.* at 2354 (citation and quotations

9    omitted).  The Supreme Court has cautioned that district courts must "tread carefully in construing

10   this exclusionary principle lest it swallow all of patent law." *Id.* (citing *Mayo Collaborative Servs.*

11   *V. Prometheus Labs., Inc.*, 132 S.Ct. 1289, 1293-1294 (2012)).

12       In *Alice*, the Supreme Court provided guidance for analyzing whether a claim is directed to

13   an abstract idea ("Step One"), and if it is whether it nonetheless rises to a level of innovation that is

14   still patent eligible ("Step Two"). *Id.* at 2355.  If a claim is found not to be abstract at Step One,

15   there is no need to reach Step Two. *Id.* at 2355.  Where a patent is directed to a technological

16   solution to a technological problem, it is not directed to an abstract idea. *Enfish, LLC v. Microsoft*

17   *Corp.,* 822 F.3d 1327, 1335-1336 (Fed. Cir. 2016) (holding that "specific improvement[s] to the

18   way computers operate" are not abstract).  Further, the Federal Circuit has noted that courts should

19   be wary of tracing the invention to a real-world analogy, which often oversteps into invalidity

20   based on Sections 102 and 103. *See Data Engine Techs. LLC*, 906 F.3d at 1011.  If the district

21   court proceeds to Step Two, the "claims are taken together as an ordered combination" to

22   determine whether they "recite an invention that is not merely the routine or conventional use" of a

23   computer. *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1259 (Fed. Cir. 2014).  Thus,

24   the cautions set forth in *Berkheimer* and *Aatrix* are particularly apt at Step Two, where the court

25   analyzes whether limitations in the claims are well-understood, routine, and conventional.

26

27

28

8474/1/7636143.v1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## IV.    ARGUMENT

### A.    The Motion Should be Denied Under Rule 12(g)(2)

Rule 12(g)(2) precludes a defendant from filing a second motion to dismiss based on a defense or objection "that was available to the party but omitted from its earlier motion."  Fed R. Civ. P. 12(g)(2).  Defendant filed the First MTD without raising any issue of patentable subject matter.  (D.I. 17.)  Defendant proffers no reason in its Second MTD for why it could not have raised the alleged defense of unpatentable subject matter with its First MTD.  (*See, generally*, D.I. 31.)  Indeed, there is no reason.  As detailed above, the First Amended Complaint asserts the same patent—the '893 Patent—against the same products, and includes the same exemplary infringement chart.  (D.I. 1 and D.I. 24 at Exhibits A and B to both.)  Thus, under Rule 12(g)(2), this Court should deny Defendant's Second MTD as untimely.  *See F.T.C. v. Wellness Support Network, Inc.*, No. 10-cv-04879, 2011 WL 4026867, at *4 (N.D. Cal. Sept. 12, 2011) (denying motion to dismiss claims that had been asserted in the original complaint but not raised in the first motion to dismiss "on the basis that it is untimely under Rule 12(g)(2)").

The Ninth Circuit has explained that "a defendant who fails to assert a failure-to-state-a-claim defense in a pre-answer Rule 12 motion cannot assert that defense in a later pre-answer motion under Rule 12(b)(6)."  *In re Apple iPhone Antitrust Litigation*, 846 F.3d 313, 318 (9th Cir. 2017), *cert. granted sub nom. Apple Inc. v. Pepper*, 138 S. Ct. 2647, 201 L. Ed. 2d 1049 (2018). Although the Ninth Circuit went on to find that it may not be reversible error for a district court to consider an untimely Rule 12(b)(6) motion where the successively filed motion was not filed for any strategically abusive purpose (*id.* at 320), the Ninth Circuit did not hold that a district court "*must* consider" any factors before enforcing the Rule 12(g)(2) bar.  *Harrell v. City of Gilroy,* No. 17-cv-05204-LHK, 2019 WL 452039, at *8 (N.D. Cal. Feb. 5, 2019) (emphasis in original).

No exception applies here because the Second MTD represents an attempt at gamesmanship.  The First Amended Complaint did not assert any previously unidentified patents or bases for Section 101 eligibility, but the First MTD did not challenge patent eligibility.  There is no reason Defendant could not have included this challenge in the First MTD—the combined page count of the First MTD (D.I. 17) and Second MTD (D.I. 31) is only 21 pages, within the 25-page

7

8474/1/7636143.v1

maximum set by N.D. Cal. Local Rule 7-2(b).  Many courts in this District have declined to

consider such successive Rule 12(b)(6) motions.  *See Harrell,* 2019 WL 452039 at *9 (holding that

Rule 12(g)(2) barred the later-filed motion to dismiss); *Ojmar US, LLC v. Security People, Inc.*,

No. 16-cv-04948-HSG, 2017 WL 5495912, at *4 (N.D. Cal. Nov. 16, 2017) (issued after *In re*

*Apple*, denying motion and noting that no exceptions to Rule 12(g)(2) applied); *Romo v. Wells*

*Fargo Bank, N.A.*, No. 15-cv-03708-EMC, 2016 WL 3523779, at *2 (N.D. Cal. June 28, 2016)

(refusing to consider challenges to claims that defendant "failed to squarely raise" in the original

motion to dismiss).

Further, Defendant first filed a *narrower* motion, one that addressed tangential issues

(indirect infringement and willfulness) but would not have disposed of the case even if it were

granted.  (D.I. 17.)  The Second MTD, however, could have disposed of the entire case if it had any

merit (as discussed below, it does not).  (D.I. 31.)  Thus, filing the broader motion *after* the

narrower motion demonstrates the strategic attempt to delay the case and waste judicial and party

resources.  The economical approach, if there were any justifiable reason for filing successive

motions to dismiss, would have been to first file the broader motion and then, only if necessary, file

a second, narrower motion.  *See, e.g., In re Packaged Seafood Products Antitrust Litigation,* 277 F.

Supp. 3d 1167, (S.D. Cal. 2017) (holding that to "refuse to enforce Rule 12(g)(2)'s clear command

on such a foundational argument . . . would set a dangerous precedent regarding the ability to

continually hamstring a plaintiff with wave after wave of motions to dismiss").  But again,

Defendant here did not even reach the page limit for a single motion to dismiss, raising the

question of why Defendant needed two motions at all, beyond obtaining a strategic advantage by

delaying the filing of the second.[1]  Defendant's attempt to skirt the Federal Rules of Civil

Procedure is only further emphasized by the fact that Defendant failed to offer any rationale for

---

[1] To the extent Defendant asserts for the first time on Reply that STS's infringement contentions created a new need for the Second MTD, Defendant alleges that "claims 1 through 4 are identical to claims 5 through 8 *for all purposes of relevance*" (D.I. 31 at 4, n.5), and claim 1 was charted in Ex. B to the Complaint (D.I. 1 at Ex. B).  Further, Defendant challenges all claims of the '893 Patent even though claims 3 and 7 are not asserted against Defendant.  Thus, the contentions do not affect whether Defendant could have filed the Second MTD earlier.

1   filing successive motions, despite Rule 12(g)(2)'s prohibition, with its opening papers.  (*See,*

2   *generally,* D.I. 31 (not citing Rule 12(g)(2).)

3        Finally, courts in this District have noted that where there are likely questions of fact, it

4   would not be in the interests of judicial economy to consider an untimely Rule 12(b)(6) motion.

5   *F.T.C. v. Wellness Support Network, Inc.*, 2011 WL 4026867 at *3**.**   As detailed below, Defendant

6   has failed to establish by clear and convincing evidence that the '893 Patent claims are directed to

7   ineligible subject matter, including because, if the Court reaches Step Two of *Alice*, significant

8   factual questions preclude judgment at this time.  Thus, in view of the strategic attempt to delay the

9   case, the presumption of validity that patents hold, and the present factual questions, STS requests

10  that this Court enforce the bar set forth in Rule 12(g)(2) and deny Defendant's untimely Second

11  MTD.

12      **B.**      **The Claims Are Patent Eligible**

13          **1.**      **The Claims Are Directed to Physical Devices, Not Abstract Ideas**

14       Step One of the *Alice* test requires the Court to first determine "whether the computer-

15  implemented claims at issue … are 'directed to' a patent-ineligible abstract idea." *DDR Holdings,*

16  *LLC*, 773 F.3d at 1256-1257 (quoting *Alice*, 134 S. Ct. at 2355).  Analyzing claim 1 under Step One

17  makes clear that the '893 Patent are not abstract—the claims are directed to a physical device.  Where

18  "[t]he weight of the claim clearly focuses on a tangible, non-abstract device as the invention which,

19  through the allegedly unconventional combination of components" achieves a specific purpose, the

20  claim is not directed to an abstract idea.  *Immersion Corp. v. Fitbit, Inc.*, 313 F. Supp. 3d 1005, 1023

21  (N.D. Cal. Mar. 5, 2018) (citing *Thales Visionix Inc. v. United States*, 850 F.3d 1343, 1348-1349

22  (Fed. Cir. 2017)).  This further demonstrates Defendant's gamesmanship in presenting the Second

23  MTD—attempting to hide behind method claims to avoid this precedent (though such attempts fail,

24  as even the method claim is directed to a method of using that physical device).

25       Claim 1 is directed to a specific physical device with a particularized use: a "merchant point

26  of sale (POS) transaction terminal, for acceptance of bankcard payment pursuant to a sales

27  transaction". ('893 Patent at claim 1.)  Claim 1 goes on to describe that the POS transaction terminal

28  is "a mobile and portable wireless device" and describes the specific functionality this physical

1  device must achieve, *e.g.*, "communicates wirelessly", "receives input", "generates transaction

2  specific data".[2]  (*Id.*)  Indeed, even claim 5, a method claim, is directed to a method of using a

3  "merchant point of sale (POS) transaction terminal, for acceptance of bankcard payment pursuant to

4  a sales transaction", and describes similar required functionality and the performance of certain steps

5  relating to processing sales transactions using that POS transaction terminal.  ('893 Patent at claim

6  5.)  Defendant would have the Court ignore the physical components of the claims.

7         Other district courts have similarly found claims directed to a physical device are patent

8  eligible—even in cases where the device incorporates an abstract idea as a part of its operation.  *See,*

9  *e.g., Ironworks Patents, LLC v. Apple Inc.,* No. CV 17-1399-RGA, 2018 WL 2944475, at *3 (D. Del.

10  June 12, 2018) (distinguishing cases with claims that merely referred to unimproved physical

11  components from claims that "are directed to an improved 'portable device' and 'mobile station'");

12  *Polaris Innovations Ltd. v. Kingston Tech. Co.*, 223 F. Supp. 3d 1026, 1034 (C.D. Cal. 2016);

13  *POWERbahn, LLC v. Found. Fitness LLC*, No. 3:15-cv-00327-MMD-WGC, 2016 WL 4318978, at

14  *3 (D. Nev. Aug. 11, 2016) ("While it is true that the claim includes a formula, the claim is clearly

15  directed at a piece of exercise equipment."); *Baxter Int'l, Inc. v. Carefusion Corp.*, No. 15-cv-9986,

16  2016 WL 2770787, at *9 (N.D. Ill. May 13, 2016).  *See also Avocent Huntsville, LLC v. ZPE Systems,*

17  *Inc.*, No 3:17-cv-04319-WHO, 2018 WL 1411100, at *11-13 (N.D. Cal. Mar. 21, 2018) (finding

18  claims not abstract where claims were "tied to concrete structures, with [a] specific goal").  Further,

19  Defendant itself has argued that its own alleged inventions are patentable because they "involve[]

20  physical electronic equipment."  (Declaration of Sarah Pfeiffer ("Pfeiffer Decl.") at Ex. A at 15; *see*

21  *also* Ex. B at 13-15.[3])  Defendant's contradictory positions further demonstrate the strategic ploys

22  that should contribute to this Court denying the Second MTD.  Thus, the claims are directed to

---

[2] Defendant alleges in a footnote that claim 1 is indefinite based on a "hybrid claiming issue", but it is proper for claims to physical devices to contain limitations based on the functionality of those devices.  *See, e.g., LifeNet Health v. LifeCell Corp.*, 837 F.3d 1316, 1327 (Fed. Cir. 2016). Further, this is not the basis of Defendant's motion, nor would it be a proper determination at this stage of the case without claim construction.  If anything, this serves to highlight that the analysis requires claim construction and further factual development.

[3] Patents and their file histories are considered matters of public record suitable for judicial notice. *See, e.g., In re Lipitor Antitrust Litigation*, 2013 WL 4780496 at *1; *see also Data Engine Techs. LLC*, 906 F.3d at 1008 n.2.

8474/1/7636143.v1

physical devices with specific features to improve sales transactions and cannot be considered abstract.

Even if the fact that the claims are directed to a physical device were not sufficient to establish that the claims are not abstract (which it is), relevant case law demonstrates that Defendant has "oversimplifie[d] the challenged claims by characterizing them broadly", ignoring that the '893 Patent "recites a specific method and apparatus". *See Supercell Oy v. GREE, Inc.*, No. 17-CV-05556-YGR, 2018 WL 1609584, at *10 (N.D. Cal. Apr. 3, 2018). Defendant has alleged that the '893 Patent claims are directed to "a method for processing payments in connection with purchases", a position that conflicts with the language of the claims and the specification.

Step One is not an exercise in describing the claims at the highest level possible, which would render this step superfluous and all claims abstract. Instead, the purpose of Step One is to identify when there is a risk that a claim will pre-empt others from using the abstract idea. *Mayo Collaborative Services. v. Prometheus Labs.*, 132 S. Ct. 1289, 1301 (2012). The Federal Circuit has confirmed that courts must be cautious at Step One to not describe the claims "at such a high level of abstraction and untethered from the language of the claims [because this] all but ensures that the exceptions to § 101 swallow the rule". *Enfish, LLC*, 822 F.3d at 1337. *See also McRO, Inc. v. Bandai Namco Games America Inc.,* 837 F.3d 1299, 1313 (Fed Cir. 2016) (cautioning courts to "avoid oversimplifying the claims by . . . failing to account for the specific requirements of the claims") (citation and quotations omitted).

Both claims 1 and 5, and all attendant dependent claims, include claims directed to improving the capability of the POS transaction terminal as a whole, particularly the security of such transactions. The claims are directed to a physical device, a POS transaction terminal (claim 1) and a method of using that POS transaction terminal (claim 5). Courts in this District have recognized that the purpose of Step One "is to identify a risk of preemption and ineligibility." *Avago Techs. Gen. IP (Singapore) PTE Ltd. v. Asustek Computer, Inc.*, No. 15-CV-04525-EMC, 2016 WL 1623920, at *6 (N.D. Cal. Apr. 25, 2016) (citation and quotations omitted). There is no such risk of preemption here. The '893 Patent does not include claims directed to all methods of payment, or even all methods of electronic payment, regardless of device or method, as Defendant contends.

11

Rather, the claims are narrowly tailored to solve particular technological problems that arise with relation to mobile point of sales transaction terminals.

The '893 Patent describes that one goal of the claimed device is "protecting the privacy and private data of a customer" during transactions. (*Id.* at 1:23-24.)  The '893 Patent goes on to explain that the claimed device and method of using the device "provides a level of security" because the "card number and/or the expiration date of the payment card is not disclosed to the merchant." (*Id.* at 1:49-52.)  The claimed invention achieves the goal of increased security, among other goals, by including limitations relating to security, including, for example, using a "merchant identifier", "transaction specific data", using a "customer identifier" rather than personal bankcard information to assemble a "payment authorization request record", and only processing payment once it receives "a payment approval record". ('893 Patent, claims 1 and 5.)  The claims, as further described in the specification, are directed to a specific improvement to the functionality of payment transaction devices and are more similar to cases that the Federal Circuit has found to be patent eligible. "Abstraction is avoided or overcome when a proposed new application or computer-implemented function is not simply the generalized use of a computer as a tool to conduct a known or obvious process, but instead is an improvement to the capability of the system as a whole." *Trading Techs. Int'l, Inc. v. CQG, Inc.*, 675 Fed. Appx. 1001, 1005 (Fed. Cir. 2017) (citing *Enfish*, 822 F.3d at 1339); *see also Amdocs (Israel) Limited v. Opennet Telecom, Inc.*, 841 F.3d 1288 (Fed. Cir. 2016); *Bascom Global Internet Services, Inc. v. AT&T Mobility LLC,* 827 F.3d 1341 (Fed. Cir. 2016).  Thus, the claims of the '893 Patent are not abstract.

The cases that Defendant identifies are readily distinguished, particularly when Defendant's improper description of what the claims are "directed to" is rejected.  Indeed, to overcome § 101 rejections, Defendant has argued to the PTO that "[a]nalyzed from a sufficiently high 'altitude,' any claim can be read to be 'abstract.'" (Pfeiffer Decl. at Ex. A at 14.)  Defendant also argued that the "law of patent eligibility requires consideration of the claim as a whole in the first step" of *Alice*. (*Id.* at 15.)

Defendant's description of the nature of the '893 Patent claims, however, is so divorced from the claims themselves that Defendant fails to cite or quote any claim language in its "analysis" at

12

8474/1/7636143.v1

1   Step One.  (D.I. 31 at 7-9.)  Instead, Defendant quotes an entire claim from an unrelated case, one

2   that is directed to a "method for a remote seller to process a payment", but not any particular physical

3   device.  (*Id.* at 7, citing *Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*, 876 F.3d 1372, 1378

4   (Fed. Cir. 2017).)  The fact that the device claimed in the '893 Patent is used for payment processing

5   and facilitating sales transactions does not mean that the claims should be considered abstract, despite

6   the fact that they are directed to a physical device.  Such an approach cannot be correct and is not

7   supported by the record here.  *See DDR Holdings, LLC*, 773 F.3d at 1257-1259 (noting that the fact

8   that the claims are related to the Internet did not transform otherwise patentable claims into an

9   abstract idea, even if "used by businesses" online).

10          As described above, the '893 Patent does not claim a generic method of processing payments.

11  Claim 1 is directed to a physical device that can perform a sales transaction and that device must

12  include specific features and specific functionality.  Similarly, claim 5 is a method of using that

13  physical device, not a method for processing payments that could be done on *any* device or

14  untethered from a specific device.  Defendant's citation of *Credit Acceptance Corp. v. Westlake*

15  *Servs.* fares no better. 859 F.3d 1044 (Fed. Cir. 2017).  There, the representative claim was directed

16  to a generic "system for generating financing packages."  *Id.* at 1047.  There was no claim to a

17  physical device with specific features that improved the functionality of that device and the process,

18  as the '893 Patent claims include.

19          Neither of the other cited cases—presented without a direct comparison to the '893 Patent

20  claims—includes claims directed to a physical device or method of using a physical device, where

21  that physical device achieves improved functionality through specific claim limitations.  *See Internet*

22  *Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1344-145 (Fed. Cir. 2015) (claiming a "method

23  of providing an intelligent user interface"); *Smart Sys. Innovations LLC v. Chicago Transit Authority*,

24  873 F.3d 1364, 1368-1369 (Fed. Cir. 2017) (a "method for validating entry"). Defendant attempts to

25  distill the '893 Patent claims down to basic components, completely untethering the nature of the

26  claims from the language itself.  Unlike those cases, "the claims here are directed to a technological

27  improvement".  *Visual Memory LLC v. NVIDIA Corp.*, 867 F.3d 1253, 1259 (Fed. Cir. 2017).  The

28  '893 Patent claims are not abstract because they are directed to a physical device and method of using

13

8474/1/7636143.v1

that physical device, including specific features and functionality to improve the security of payment transactions using wireless communications.

### 2. The Claims Are Not Abstract at Step Two

#### a) The claims contain an inventive concept

Although proceeding to Step Two is not required because the '893 Patent claims are not abstract, this analysis further confirms the patentability of the claims.  Step Two of the *Alice* framework involves identifying the "inventive concept" and determining whether it is "sufficient to transform the nature of the claim into a patent eligible application." *McRO, Inc.*, 837 F.3d at 1312 (citing *Alice*, 134 S. Ct. at 2355) (quotations omitted).  This step entails looking at the elements of the claim and the claim as a whole "to determine whether the claims contain an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself.'"  *Id.* (citing *Mayo*, 132 S. Ct. at 1294) (quotations omitted).

In the context of the Internet arts, the court in *Network Congestion* phrased the question in Step Two as "whether the claims merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet, or whether the claims are directed to a problem specifically arising in the realm of computer technology and the claimed solution specifies how computer technology should be manipulated to overcome the problem." *Network Congestion Solutions, LLC v. U.S. Cellular Corp.,* 170 F. Supp. 3d 695, 699 (D. Del. 2016) (citing *DDR Holdings, LLC*, 773 F.3d at 1257) (quotations omitted).

As described in detail above, the '893 Patent claims include limitations directed to resolving a technological issue in payment security in the context of wireless payments and transactions.  Issues relating to payment security in the wireless and Internet context simply did not exist prior to the Internet and do not have a real-world analogy—Captain Crunch consumers with decoder rings (D.I. 31 at 12) have no fear of identity theft while enjoying their cereal.  While fraud was possible before the Internet, such fraud typically required the bad actor to, at some point, have physical access to the card or transaction records.  Further, the bad actor would likely need to be physically present while using the card.  In the wireless and Internet context, using a credit card with a merchant in the digital

14

world creates the possibility that the merchant receives in electronic format—and potentially retains—the customer's personal data, including payment card information.  (D.I. 24 at ¶9.)  Those risks only escalated with the advent of wireless and Internet communications, which are vulnerable to hacking and security breaches that are not present in other payment transactions (such as a cash payment or check transactions before the advent of the Internet).  (*Id.* at ¶10.)  A hacking incident at a merchant could expose the personal identifying or payment card information for every customer, if that merchant uses and stores the customers' payment information from credit card transactions.  Further, the prominence of this new technology gave rise to fraudulent transactions because it is possible to use that data to complete transactions online without a physical presence, such as by using the personal information from the electronic data to purchase products online or using the personal identifying information to open new lines of credit.  (*Id.*)

The threat and risks of identity theft and fraudulent transactions were well-recognized in the field.  (*Id.* at ¶11-14 and Exs. C-G.)  The '893 Patent proposes a technological solution to help resolve the security concerns in sharing bankcard data with merchants—using a customer identifier in merchant POS transaction terminals, rather than the bankcard data.  (*Id.* at ¶13.)  Later publications have recognized that methods that replace personal identifying information with a new identifier significantly reduce the risks associated with wireless payment transactions.  (*Id.* at ¶14, Exs. E-G.)  Defendant has offered no evidence, or even argument, rebutting these allegations in the First Amended Complaint.  (*Compare* D.I. 31 at 9-13.)  Thus, STS has sufficiently demonstrated that the '893 Patent claims a technological solution to a technological problem, and is patent eligible at Step Two.

Moreover, Defendant makes no attempt to construe terms from the claims, yet relies on arguing that the term "customer identifier" does not "describe how the customer identifier is used or include any limitations suggesting that the identifier conceals information".  (D.I. 31 at 11-12.)  The Federal Circuit has explained that, while early dispositive motions applying Section 101 are possible, "it will ordinarily be desirable—and *often necessary*—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter."  *Bancorp Servs., LLC v. Sun Life Assur. Co. of Can.*

15

(U.S.), 687 F.3d 1266, 1273-1274 (Fed. Cir. 2012) (emphasis added).  At this stage of the case and for purposes of a motion to dismiss based on § 101, Courts adopt the meanings proposed by Patentees.  *See, e.g., Genetic Techs. Ltd. v. Lab. Corp. of Am. Holdings,* No. 12-CV-1736-LPS-CJB, 2014 WL 4379587, at *6 (D. Del. September 3, 2014).

For this Opposition, STS proposes that "bankcard data from a customer with a customer identifier" be construed as "an electronic data identifier used to anonymously identify a customer's bankcard data for electronic payment processing".[4]  The '893 Patent specification supports this construction in multiple locations.  For example, at column 9, lines 17-38, the '893 Patent describes transforming bankcard data into equivalent data so that it no longer transmits the personal identifiers, but can be used in place of the bankcard data.  The '893 Patent further explains that a "customer identifier 320 can be used to anonymously identify and verify the customer" ('893 Patent at 7:24-25) and describes various non-limiting methods of creating customer identifiers (*id.* at 7:31-52) and protecting bankcard data (*id.* at 8:60-9:16).  *See also* '893 Patent at Figs. 6A-C (describing using a number, payment card number, at the merchant terminal that is different than the customer's bankcard number so that the merchant terminal does not receive the bankcard number itself but can still process the transaction); 1:18-24, 7:20-64, 10:21-11:15, 12:4-7, 13:4-14, 11:11-29.

STS's proposed construction demonstrates that the claims include limitations relating to the technological problem the '893 Patent seeks to solve.  Further, the '893 Patent claims are readily distinguished from those of the cases Defendant cites.  Defendant presents these cases as if they hold that the use of encrypted information would render any claim abstract, regardless of the other elements or the claim when considered as a whole.  (D.I. 31 at 10-12.)  But the claims in those cases lack the specificity and technological improvements the '893 Patent claims offer.  For example, the claim at issue in *RecogniCorp v. Nintendo Co.,* was a method claim, untethered to any specific physical device and the patent owner did not identify how the use of encoding improved application of that method in an inventive manner.  855 F.3d 1322, 1328 (Fed. Cir. 2017) ("RecogniCorp has not alleged a particularized application of encoding and decoding image data. Indeed, claim 1 does

---

[4] STS reserves the right to propose a different construction for this and other claim terms, propose construction of additional terms, and to offer additional evidence regarding the proper construction of the claims during the claim construction phase of this case.

16

1   not even require a computer; the invention can be practiced verbally or with a telephone.").[5]  Thus,

2   as discussed further below, the present claims contain numerous limitations that, when construed as

3   set forth above,[6] place them well within the category of those deemed to be technical solutions to

4   technological problems.

b)   **Questions of fact preclude judgment on the pleadings**

6

7           Even if the Court does not agree that paragraphs 8-14 and Exhibits A and C-G of the First

8   Amended Complaint establish definitively that the '893 Patent claims patentable material, STS pled

9   sufficient facts to show a genuine issue of fact regarding Step Two of the *Alice* test in view of

10  controlling Federal Circuit precedent.  "[T]o the extent it is at issue in the case, whether a claim

11  element or combination is well-understood, routine, and conventional is a question of fact."  *Aatrix*

12  *Software, Inc.,* 890 F.3d at 1359.[7]

13          Further, "[a] patent is presumed valid, and the burden of establishing invalidity of a claim

14  rests on the party asserting invalidity by clear and convincing evidence."  *Core Wireless*, 880 F.3d

15  at 1364.  The application that resulted in the '893 Patent faced several office actions that included

16  rejections based on Section 101, all issued after the decision in *Alice*.  (Pfeiffer Decl. at Ex. C at, *e.g.,*

17  STS0000037-38, STS0000120-122.)  But the Patent Office withdrew this rejection "in view of recent

---

18  [5] *Dropbox, Inc. v. Synchronoss Techs., Inc.*, No. 18-CV-03685-LHK, 2019 WL 1170776, at *15

19  (N.D. Cal. Mar. 13, 2019) (the "session ID" was unrelated to technological problem or solution and claims were untethered to a specific physical device)

20  [6] In the event Defendant contests STS's claim construction, this may be an instance where the Court should defer ruling on the Second MTD until after claim construction. *Synchronoss*

21  *Technologies, Inc. v. Hyperlync Technologies, Inc.*, No. 15-CV-2845 (MLC), 2016 WL 868920, at * 4 (D.N.J. Mar. 7, 2016).

22  [7] District courts have confirmed that, particularly in the wake of *Berkheimer*, "what would have been well known to 'a skilled artisan in the relevant field' at the time the patents issued" can be difficult to determine at the pleading stage.  *Pure Data Sys., LLC v. Ubisoft, Inc.*, No. 18-CV-00852-JCS,

23  2018 WL 3417530, at *10 (N.D. Cal. July 13, 2018).  *See also Hypermedia Navigation LLC v.*

24  *Facebook, Inc.*, No. 17-CV-05383-HSG, 2018 WL 3932434, at *5 (N.D. Cal. Aug. 16, 2018) (finding that "method [that] provides users with sought after information more quickly, and also

25  entertains them in the process" survived Step Two at the pleading stage); *Symantec Corp. v. Zscaler, Inc.*, No. 17-CV-04426-JST, 2018 WL 3539269, at *5 (N.D. Cal. July 23, 2018) (noting that the

26  specification itself can "raise[] an issue of fact as to inventiveness"); *Illumina, Inc. v. Natera, Inc.*, No. 18-CV-01662-SI, 2018 WL 3126383, at *4 (N.D. Cal. June 26, 2018); *TMI Solutions LLC v.*

27  *Bath & Body Works*, No. 17-965-LPS-CJB, 2018 WL 4660370, at *8 (D. Del. Sept. 28, 2018) (finding dismissal under Rule 12 not appropriate where "complaint adequately and plausibly alleges

28  that the claims capture a non-routine, unconventional, and not well-understood activity, and may improve the functioning of computers").

17

case law and USPTO guidance with respect to 35 USC 101". (*Id.* at STS0000037.)  Although the Federal Circuit recently stated in a non-precedential option that courts are not bound by the Patent Office's published guidance, the Federal Circuit confirmed that patents are presumed valid. *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 760 F. App'x 1013 (Fed. Cir. 2019). Further, the Federal Circuit reached this conclusion only after conducting a specific comparison of the claims of the challenged patent to binding Federal Circuit precedent, noting that the PTO guidelines are not binding on the Federal Circuit.  *Id.*  Defendant has offered no such equivalent comparison here, nor offered any justification for disrupting the Patent Office's conclusion that the '893 Patent claims were patentable after the *Alice* decision and later Federal Circuit decisions.

Defendant has not satisfied its burden to overcome the validity presumption by clear and convincing evidence.  The First Amended Complaint, including the supporting exhibits, establishes that there is a question of fact as to whether the claims are well-understood, routine, or conventional. Paragraphs 8-14 provide detailed allegations regarding the technological nature of the problem and solution addressed by the '893 Patent.  (D.I. 24 at ¶¶8-14.)  As further detailed above, paragraphs 8-9 identify portions of the '893 Patent specification detailing security concerns with wireless and card payments.  Paragraphs 10-12 demonstrate that security concerns relating to wireless and "near-field communication" transactions had been identified by those in the art.  Paragraphs 13 and 14 allege that the '893 Patent claims address these concerns, and that techniques for securing these transactions were praised by those in the art since the time of the invention.  Praise is one factor contributing to a determination that a claimed invention is non-obvious (*see, e.g., Transocean Offshore Deepwater Drilling, Inc. v. Maersk Contractors USA, Inc.*, 617 F.3d 1296, 1304 (Fed. Cir. 2010)), demonstrating that questions of fact exist as to whether the claims contain an inventive concept.

In contrast, Defendant presents mere attorney argument and conclusory statements regarding the level of skill and knowledge in the relevant field without addressing the allegations in the First Amended Complaint or the attached material.  Further, as detailed above, Defendant fails to identify a comparable Federal Circuit case that would compel a finding that the '893 Patent claims are ineligible.  Defendant's arguments—insufficient to satisfy the clear and convincing evidence standard in their own right—serve only to highlight the factual disputes that exist relating to the '828

18

Patent.  Thus, the Court should deny the Second MTD because factual disputes demonstrate that Defendant has failed to establish by clear and convincing evidence that the '893 Patent claims are directed to abstract ideas.

## V.      CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss and issue a finding that the claims of the Patents-in-Suit are directed to patent eligible subject matter under 35 U.S.C. § 101.


Dated: May 17, 2019


By:  _/s/ Sarah A. Pfeiffer_____

Sarah A. Pfeiffer
Mark B. Chassman (CA Bar No. 119619)
Email: mchassman@chassmanseelig.com
**CHASSMAN & SEELIG LLP**
11766 Wilshire Boulevard, Suite 270
Los Angeles, CA 90025
Telephone: (310) 929-7192
Fax: (310) 929-7627

Sarah A. Pfeiffer (CA Bar No. 278205)
Email: sap@msf-law.com
Seth H. Ostrow (*pro hac vice*)
Email: sho@msf-law.com
**MEISTER SEELIG & FEIN LLP**
125 Park Avenue, 7th Floor
New York, NY 10017
Telephone: (212) 655-3500
Fax: (646) 539-3649

8474/1/7636143.v1

1

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2019, I filed the foregoing document with the Court's

ECF/CM system, causing it to be emailed to the persons listed below:


CLEMENT SETH ROBERTS
croberts@orrick.com
JACOB M. HEATH
jheath@orrick.com
WILL MELEHANI
wmelehani@orrick.com
**ORRICK, HERRINGTON & SUTCLIFFE LLP**
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone:     +1 415 773 5700
Facsimile:     +1 415 773 5759

*Attorneys of record for Defendant Poynt Co.*



MEISTER SEELIG & FEIN LLP



By: */s/ Sarah A. Pfeiffer*
Sarah A. Pfeiffer

STS'S OPPOSITION TO MOTION TO DISMISS, Case No. 4:18-cv-6862-YGR

8474/1/7636143.v1