CLEMENT SETH ROBERTS (SBN 209203)
croberts@orrick.com
WILL MELEHANI (SBN 285916)
wmelehani@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Telephone: +1 415 773 5700
Facsimile: +1 415 773 5759

JACOB M. HEATH (SBN 238959)
jheath@orrick.com
ORRICK, HERRINGTON & SUTCLIFFE LLP
1000 Marsh Road
Menlo Park, CA 94025
Telephone: +1 650 614 7400
Facsimile: +1 650 614 7401

Attorneys for Defendant
POYNT CORPORATION

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| SALES TRANSACTION SYSTEMS, LLC,<br><br>        Plaintiff,<br><br>    v.<br><br>POYNT CO.,<br><br>        Defendant. | Case No. 4:18-CV-6862-YGR<br><br>**POYNT CORPORATION'S REPLY BRIEF IN SUPPORT OF ITS MOTION TO DISMISS FOR PATENT INELIGIBILITY**<br><br>Date: June 11, 2019<br>Time: 2:00 p.m.<br>Dept: Courtroom 1, 4th Floor<br>Judge: Hon. Yvonne Gonzalez Rogers<br>Date Action Filed: November 13, 2018 |

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................................. 1

II.   THE '893 PATENT IS DIRECTED TO AN ABSTRACT IDEA. ................................... 2

    A.    The '893 Patent Is Abstract Despite Its Inclusion of Physical Devices. ................. 2

    B.    The '893's Claims Do Not Recite the Alleged Technological Improvement. ......... 5

    C.    STS's Preemption Analysis Is Legally and Factually Incorrect. ............................ 7

III.  THE '893 PATENT CLAIMS LACK AN "INVENTIVE CONCEPT." ........................... 8

    A.    STS's Proposed Construction Does Not Supply an Inventive Concept.................. 8

    B.    The '893 Patent Does Not Claim "a Technical Solution to a Technical Problem." ................................................................................................................ 10

IV.  THERE ARE NO RELEVANT FACTUAL DISPUTES. ................................................ 11

V.   FED. R. CIV. P. 12(G)(2) DOES NOT BAR A DECISION ON POYNT'S MOTION. ........................................................................................................................... 13

VI.  CONCLUSION .................................................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alice Corp. Pty. Ltd. v. CLS Bank Int'l*,
   573 U.S. 208 (2014) .................................................................................................... *passim*

*Amdocs (Isr.) Ltd. v. Openet Telecom, Inc.*,
   841 F.3d 1288 (Fed. Cir. 2016) ............................................................................................ 7

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
   788 F.3d 1371 (Fed. Cir. 2015) ............................................................................................ 7

*Automated Tracking Sols., LLC v. Coca-Cola Co.*,
   723 F. App'x 989 (Fed. Cir. 2018) ....................................................................................... 2

*Avago Techs. Gen. IP (Singapore) PTE Ltd. v. Asustek Computer, Inc.*,
   No. 15-CV-04525-EMC, 2016 WL 1623920 (N.D. Cal. Apr. 25, 2016) ............................. 7

*Avocent Huntsville, LLC v. ZPE Systems, Inc.*,
   No 3:17-cv-04319-WHO, 2018 WL 1411100 (N.D. Cal. Mar. 21, 2018) ............................ 4

*BASCOM Glob. Internet Servs. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016) ............................................................................................ 7

*Baxter Int'l, Inc. v. Carefusion Corp.*,
   No. 15-cv-9986, 2016 WL 2770787 (N.D. Ill. May 13, 2016) ............................................. 4

*Bilski v. Kappos*,
   561 U.S. 593 (2010) .............................................................................................................. 7

*Burnett v. Panasonic Corp.*,
   741 F. App'x 777 (Fed. Cir. 2018) ..................................................................................... 12

*ChargePoint, Inc. v. SemaConnect, Inc.*,
   No. 2018-1739, 2019 U.S. App. LEXIS 9191 (Fed. Cir. Mar. 28, 2019) .................. 1, 4, 5, 12

*Clarilogic, Inc. v. FormFree Holdings Corp.*,
   681 F. App'x 950 (Fed. Cir. 2017) ....................................................................................... 8

*DDR Holdings, LLC v. Hotels.com, L.P.*,
   773 F.3d 1245 (Fed. Cir. 2014) .......................................................................................... 10

*Immersion Corp. v. Fitbit, Inc.*,
   313 F. Supp. 3d 1005 (N.D. Cal. 2018) ............................................................................ 3, 4

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015) ...................................................................................... 9, 10

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
    850 F.3d 1332 (Fed. Cir. 2017)..................................................................................2

*Intellectual Ventures I LLC v. Mfrs. & Traders Tr. Co.*,
    76 F. Supp. 3d 536 (D. Del. 2014) ...................................................................5, 9, 10

*Internet Patents Corp. v. Active Network, Inc.*,
    790 F.3d 1343 (Fed. Cir. 2015)..................................................................................2

*Inventor Holdings, LLC v. Bed Bath & Beyond, Inc.*,
    876 F.3d 1372 (Fed. Cir. 2017)..................................................................................5

*Ironworks Patents v. Apple Inc.*,
    Civil Action No. 17-1399-RGA, 2018 U.S. Dist. LEXIS 98246
    (D. Del. June 12, 2018) ..............................................................................................4

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
    566 U.S. 66 (2012)......................................................................................................8

*O'Reilly v. Morse*,
    56 U.S. (15 How.) 62 (1854)....................................................................................12

*Pepper v. Apple Inc. (In re Apple iPhone Antitrust Litig.)*,
    846 F.3d 313 (9th Cir. 2017)..............................................................................13, 14

*Polaris Innovations Ltd. v. Kingston Tech. Co.*,
    223 F. Supp. 3d 1026 (C.D. Cal. 2016) .....................................................................4

*POWERbahn, LLC v. Found. Fitness LLC*,
    No. 3:15-cv-00327-MMD-WGC, 2016 U.S. Dist. LEXIS 106925
    (D. Nev. Aug. 11, 2016) .............................................................................................4

*RecogniCorp v. Nintendo Co.*,
    855 F.3d 1322 (Fed. Cir. 2017)..............................................................................9, 11

*SAP Am., Inc. v. InvestPic, LLC*,
    898 F.3d 1161 (Fed. Cir. 2018).....................................................................2, 10, 11

*Shortridge v. Found. Constr. Payroll Serv., LLC*,
    655 F. App'x 848 (Fed. Cir. 2016) .............................................................................9

*Symantec Corp. v. Zscaler, Inc.*,
    No. 17-cv-04426-JST, 2018 U.S. Dist. LEXIS 48650
    (N.D. Cal. Mar. 23, 2018) ........................................................................................13

*TLI Communs. LLC v. AV Auto., L.L.C.*,
    823 F.3d 607 (Fed. Cir. 2016)....................................................................................2

*Trading Techs. Int'l, Inc. v. CQG, Inc.*,
    675 F. App'x 1001 (Fed. Cir. 2017) ..........................................................................6

*Two-Way Media Ltd v. Comcast Cable Communs., LLC*,
    874 F.3d 1329 (Fed. Cir. 2017).................................................................................5, 6, 7, 8

*Uniloc USA, Inc. v. HTC Am., Inc.*,
    No. C17-1558JLR, 2018 U.S. Dist. LEXIS 100737
    (W.D. Wash. June 14, 2018)............................................................................................11

**Other Authorities**

Fed. R. Civ. P. 1 ......................................................................................................................13

Fed. R. Civ. P. 12(b)(6).............................................................................................................13

Fed. R. Civ. P. 12(c).............................................................................................................13, 14

Fed. R. Civ. P. 12(g)(2).........................................................................................................13, 14

Fed. R. Civ. P. 12(h)(2)............................................................................................................13

## I. INTRODUCTION

The claims of the '893 patent are directed to the abstract idea processing authorizations for credit card payments using generic computer devices performing conventional data-processing functions. Nothing in plaintiff Sales Transaction System LLC's ("STS") opposition changes this fact. Indeed, STS offers only conclusory arguments and jargon-riddled handwaving in an effort to defend its ineligible patent.

For the first step of *Alice*, STS argues that its claims are not abstract because they are directed to a physical device. But *Alice* confirmed that invoking generic and conventional physical devices to carry out abstract processes does not impart eligibility. Indeed, just a few weeks ago, in *ChargePoint, Inc. v. SemaConnect, Inc.,* No. 2018-1739, 2019 U.S. App. LEXIS 9191, at *15 (Fed. Cir. Mar. 28, 2019), the Federal Circuit found patents that claimed a physical electric vehicle charging station invalid as abstract because they were directed to "the abstract idea of communication over a network for interacting with a device, applied to the context of electric vehicle charging stations." The same analysis applies here: the claims are *directed to* the abstract idea of processing authorizations for credit card payments in the context of a point of sale terminal. They are not directed to a new physical device.

At step two, STS proposes a claim construction to remedy the fact that the claims as drafted recite nothing beyond a basic credit card authorization process. But even if one imports the alleged innovation from the patent's specification into the claims, as STS seeks to now, the claims are still ineligible. The patent's alleged innovation—the idea of using an encoded "customer identifier" as a stand-in for sensitive data—is itself just a generic implementation of "encoding," an idea that the Federal Circuit has already deemed abstract. Taking one abstract idea (processing credit card payments) and combining it with another (encoding sensitive information) does not create an eligible invention.

STS also seeks to defeat this motion by manufacturing factual disputes. Poynt Corporation's ("Poynt") motion does not dispute any facts, nor does it need to. The '893 patent is legally ineligible regardless of the various facts that STS pleads in its complaint. For this reason, and the reasons set forth below, Poynt respectfully requests that its motion to dismiss be granted.

## II. THE '893 PATENT IS DIRECTED TO AN ABSTRACT IDEA.

The claims of the '893 patent are directed to the abstract idea of processing authorizations for credit card payments. STS does not deny that its claims recite systems and methods for processing credit card payments, nor does STS deny that such a process is an abstract fundamental business practice. And this process defines the claims' "character as a whole." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). Reading through either independent claim confirms that the claimed process essentially consists of receiving payment data at a POS terminal, assembling it into a package, and sending it along for authorization. "[T]he patent claims are, at their core, directed" to this abstract idea. *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017).

### A. The '893 Patent Is Abstract Despite Its Inclusion of Physical Devices.

STS's argument that its claims are not abstract is based on a misunderstanding of the law. STS incorrectly accuses Poynt of "hiding behind a method claim" in an attempt to "bury" the patent's inclusion of a physical device, and further asserts that its claims cannot be directed to an abstract idea because they are allegedly directed to "a physical device." Opp. at 4, 8, 9.[1]

*Alice*, however, confirmed that claiming a physical device—as opposed to a method— makes no difference. *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 226 (2014) (ruling that system claims were invalid because they were "no different from the method claims in substance" and recited "components configured to implement the same idea"). It is therefore unsurprising that numerous cases have found claims ineligible despite their inclusion of physical devices. *See, e.g., TLI Communs. LLC v. AV Auto., L.L.C.*, 823 F.3d 607, 610 (Fed. Cir. 2016) (claims reciting an apparatus for storing and classifying camera phone images were abstract); *SAP Am., Inc. v. InvestPic, LLC,* 898 F.3d 1161, 1165 (Fed. Cir. 2018) (describing the system claim reciting databases and processors that was found abstract); *Automated Tracking Sols., LLC v. Coca-Cola Co.*, 723 F. App'x 989, 991-92 (Fed. Cir. 2018) (reciting a system claim relating to RFID readers and antennae that was found abstract).

---

[1] As explained in Poynt's opening brief, Poynt focused on claim 5 because claim 1 is difficult to understand. Mot. at 4 n.5. Both claims are equally ineligible.

1     It is also unsurprising that none of STS's authority holds that claims reciting physical
2  devices are per se eligible. In *Immersion Corp. v. Fitbit, Inc.*, 313 F. Supp. 3d 1005, 1011 (N.D.
3  Cal. 2018), the claims recited a haptic feedback device that would vibrate to alert the user of
4  notification events. The court found the claim was not directed to the abstract idea of
5  "notification," not because it was an apparatus claim reciting a physical device, but because the
6  specification of the patent confirmed that the invention was *focused* on a new type of device with
7  a "new arrangement of known components" that "solve[d] the problem of how to provide non-
8  audio, non-visual notification to a user." *Id.* at 1024.
9     Here, the '893 patent is not focused on any new arrangement of known components or any
10 original and unconventional physical device. Indeed, STS essentially admits that the devices in
11 its claims are entirely generic. Here is a quote from STS's opposition:

> Claim 1 is directed to a specific physical device with a particularized use: a "merchant point of sale (POS) transaction terminal, for acceptance of bankcard payment pursuant to a sales transaction". ('893 Patent at claim 1.) Claim 1 goes on to describe that the POS transaction terminal is "a mobile and portable wireless device" and describes the specific functionality this physical device must achieve, e.g., "communicates wirelessly", "receives input", "generates transaction specific data". (*Id*.) Indeed, even claim 5, a method claim, is directed to a method of using a "merchant point of sale (POS) transaction terminal, for acceptance of bankcard payment pursuant to a sales transaction", and describes similar required functionality and the performance of certain steps relating to processing sales transactions using that POS transaction terminal.

18 Opp. at 9-10 (footnote omitted). This description proves *our* point – because it is a description of
19 the basic hardware and functionality of every point of sale terminal.
20    The patent also confirms that every device involved in the claimed process is
21 conventional. The claimed merchant POS terminal is described in the claim as a mobile device
22 including only a functionally-described "interface" to a wireless communications network. Ex.
23 A, claim 1.[2] The specification adds that it has a conventional card reader with a screen and
24 buttons. *Id*. at 4:55-60. The claimed payment system is described in the specification as
25 including a conventional storage device, conventional processor and software. *Id*. at 3:5-28. And
26 the patent admits that the claimed gateway and card authorization network are the conventional

---

[2] All exhibit citations refer to the exhibits to STS's First Amended Complaint (ECF No. 24).

ones used in the prior art. *Id.* at 3:55-57.[3]

Notably, in the *Immersion* decision, the court distinguished between two patents – one of which was eligible because it was directed to a physical device while the other was found ineligible because – while it recited a physical device – it was *directed to* the abstract idea of "receiving sensor and data signals, analyzing those signals, and outputting other signals in response." 313 F. Supp. 3d at 1027-29. The claims at issue in the '893 patent are far more similar to the claims found invalid in *Immersion* than to the claims found eligible – both because the claims of the '893 recite **conventional** components, and because the claim limitations themselves expressly recite particular types of data manipulation, rather than any particular device.

A similar teaching is found in *Chargepoint*. In that (very recent) case, the Federal Circuit found ineligible claims that expressly recited a physical electric-vehicle charging station because, the claims were *directed* to the problem of network communication using (otherwise conventional) charging stations. As the Court explained in evaluating the first prong of the *Alice* inquiry:

> [T]he specification suggests that claim 1 is directed to the abstract idea of communication over a network to interact with a device connected to the network. The problem identified by the patentee, as stated in the specification, was the lack of a communication network that would allow drivers, businesses, and utility companies to interact efficiently with the charging stations.

*ChargePoint*, 2019 U.S. App. LEXIS 9191, at *13. The same is true here. The '893 patent

---

[3] The other district court cases that STS cites in support of its argument that physical devices impart eligibility are also off point. In *Ironworks Patents v. Apple Inc.*, Civil Action No. 17-1399-RGA, 2018 U.S. Dist. LEXIS 98246, at *11 (D. Del. June 12, 2018), the court found the claims were not abstract because they were directed to "an improved tangible system" rather than "claims [that] merely recite unimproved tangible systems within them." In *Polaris Innovations Ltd. v. Kingston Tech. Co.*, 223 F. Supp. 3d 1026, 1034-35 (C.D. Cal. 2016), the patent claims a structurally unconventional memory card that allowed for a more efficient chip layout. In *POWERbahn, LLC v. Found. Fitness LLC*, No. 3:15-cv-00327-MMD-WGC, 2016 U.S. Dist. LEXIS 106925, at *6-7 (D. Nev. Aug. 11, 2016), the claims were directed to a new and unconventional piece of exercise equipment that applied realistic resistance. In *Baxter Int'l, Inc. v. Carefusion Corp.*, No. 15-cv-9986, 2016 WL 2770787, at *9 (N.D. Ill. May 13, 2016), the claims recited an unconventional smart infusion pump. And in *Avocent Huntsville, LLC v. ZPE Systems, Inc.*, No 3:17-cv-04319-WHO, 2018 WL 1411100, at *11-13 (N.D. Cal. Mar. 21, 2018), the claims recited a new network management system. In each of these cases, the claimed inventions were to new types of unconventional devices, not merely to abstract methods carried out by generic devices.

1    *nowhere* says that the problem it is trying to solve is some sort of deficient or sub-optimal

2    hardware.  Instead, it describes the problems in terms of issues with data transmission and

3    privacy.  See Opp. at 12 ("The '893 Patent describes that one goal of the claimed device is

4    'protecting the privacy and private data of a customer' during transactions." (citing Ex. A at 1:23-

5    24)).  Put differently, the claims of the '893 are highly analogous to the claims at issue in

6    *Chargepoint* for purposes of the first prong of the *Alice* inquiry, because they are *directed to*

7    purported data transmission problems *rather than* to a novel physical device with unconventional

8    hardware.

9         For this same reason, STS's attempt to distinguish *Inventor Holdings, LLC v. Bed Bath &*

10   *Beyond, Inc*. fails.  STS is correct that the claim in *Inventor Holdings* was directed to a "method

11   for a remote seller to process a payment but not to any particular physical device."  Opp. at 13.

12   But the same is true of the '893 patent.  As explained above, STS's abstract payment process, like

13   the system in *Inventor Holdings*, just requires "a conventional, commercially available POS

14   processing system" and "a conventional computer system."  *Inventor Holdings*, 876 F.3d 1372,

15   1375 (Fed. Cir. 2017).

16        **B.**    **The '893's Claims Do Not Recite the Alleged Technological Improvement.**

17        STS next suggests that the '893 patent is not directed to an abstract idea because its

18   specification explains that the patent seeks to "protect[] the privacy and private data of a customer

19   during transactions."  Opp. at 12 (internal quotation marks omitted).  According to STS, this

20   means that the claims are directed to a patent-eligible technological improvement.  Not so.

21        Even assuming, *arguendo,* that this "improvement" would qualify as technological,[4] the

22   claims do nothing to implement this goal.  *See Two-Way Media Ltd v. Comcast Cable Communs.,*

23   *LLC*, 874 F.3d 1329, 1339 (Fed. Cir. 2017) (finding ineligibility where the claims failed to recite

24   the patent's alleged technological improvement).  As explained in Poynt's opening brief, the

---

[4] As explained in more detail below, "protecting privacy and private data of a customer during transactions" is itself an abstract idea, and not a technological one, and therefore would not impact the eligibility of the claims even if it were reflected therein.  *See Intellectual Ventures I LLC v. Mfrs. & Traders Tr. Co.*, 76 F. Supp. 3d 536, 551 (D. Del. 2014) (explaining that "providing a user with aliases to use in conducting transactions" is an abstract idea and is not a technical solution to a technical problem).

specification describes a process whereby the customer provides a "customer identifier" but does not provide its private information. Ex. A at 7:23-30. The specification (but not the claims) say that this customer identifier is then used to look up the customer's card information so that payment information can be forwarded without giving the merchant custody of that data. *Id*. at 7:53-64. But the claims of the '893 patent do none of this and – indeed, do not even require *withholding private data* from the merchant. Instead the claims merely recite receiving "bankcard data from a customer with a customer identifier." They do not require the customer identifier to be the *only* thing that is received or otherwise do anything to *prevent* the merchant from receiving customer data. Ex. A, claims 1, 5. Indeed, once it is received, the "customer identifier" is never again mentioned in the claims.

To distract from this problem, STS argues that, unlike the patents in the cases cited by Poynt, its patent is directed to "a physical device" that "achieves improved functionality through specific claim limitation." Opp. at 13. But when trying to explain *how* its claimed process allegedly improves security, STS falters:

> The claimed invention achieves the goal of increased security, among other goals, by including limitations relating to security, including, for example, using a "merchant identifier", "transaction specific data", using a "customer identifier" rather than personal bankcard information to assemble a "payment authorization request record", and only processing payment once it receives "a payment approval record". ('893 Patent, claims 1 and 5.) The claims, as further described in the specification, are directed to a specific improvement to the functionality of payment transaction devices and are more similar to cases that the Federal Circuit has found to be patent eligible.

Opp. at 12. This laundry list of claim limitations does not count as a substantive explanation for *how* the claims purportedly increase security. In particular, STS does not, and cannot, explain *how* the *claimed* invention utilizes any of these various pieces of data to improve security or otherwise achieve the goals set forth in the specification. *Two-Way Media*, 874 F.3d at 1338 (confirming a claim was abstract when a proposed construction "fail[ed] to indicate how the claims are directed to … an improvement in the *functioning* of the system) (emphasis in original).

For this reason, the cases that STS mentions in support of its "technical improvement" argument are distinguishable. In *Trading Techs. Int'l, Inc. v. CQG, Inc.*, 675 F. App'x 1001, 1004 (Fed. Cir. 2017), the Federal Circuit upheld a patent when its *claims* recited structures and

1  functionalities that resolved specific prior-art problems.  In *BASCOM Glob. Internet Servs. v.*
2  *AT&T Mobility LLC*, 827 F.3d 1341, 1352 (Fed. Cir. 2016), the patent was found inventive
3  because the *claims* achieved an improvement by "carv[ing] out a specific location for the filtering
4  system (a remote ISP server) and requir[ing] the filtering system to give users the ability to
5  customize filtering for their individual network accounts."  Likewise, in *Amdocs (Isr.) Ltd. v.*
6  *Openet Telecom, Inc.*, 841 F.3d 1288, 1300-01 (Fed. Cir. 2016), the court found eligibility
7  because "*Claim* 1 include[d] the enhancing limitation" that provided the "critical advancement
8  over the prior art." (emphasis added).  By contrast, the '893 patent is devoid of any limitations
9  implementing any technological improvement, and is therefore abstract even if the *alleged*
10 improvement would otherwise render them patent eligible.  *Two-Way Media*, 874 F.3d at 1338
11 (Fed. Cir. 2017) (affirming patent ineligibility when the specification described "describes a
12 system architecture as a technological innovation" but "the claim does not recite this
13 architecture").

14       **C.       STS's Preemption Analysis Is Legally and Factually Incorrect.**

15       STS's preemption argument is also wrong.  STS asserts that its claims should be deemed
16 non-abstract at step one because the purpose of this step "is to identify a risk of preemption and
17 ineligibility."  Opp. at 11 (citing *Avago Techs. Gen. IP (Singapore) PTE Ltd. v. Asustek*
18 *Computer, Inc.*, No. 15-CV-04525-EMC, 2016 WL 1623920, at *6 (N.D. Cal. Apr. 25, 2016)).
19 Preemption considerations, however, form the policy behind the *Alice* test—they are not part of
20 the test itself.  As the Federal Circuit has expressed this point: "where a patent's claims are
21 deemed only to disclose patent ineligible subject matter under the *Alice* framework, as they are in
22 this case, preemption concerns are fully addressed and made moot." *Two-Way Media*, 874 F.3d
23 at 1339 (citing *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1379 (Fed. Cir. 2015)).
24       Nor is there any truth to STS's conclusory assertion that these claims do not risk
25 preemption.  To the contrary, as interpreted by STS, the claims broadly preempt the use of
26 encoding in the context of credit card payments.  *Bilski v. Kappos*, 561 U.S. 593, 612 (2010)
27 (explaining that "limiting an abstract idea to one field of use" does not make it patentable).  In
28 particular, STS does not identify any limits to the kinds and methods of encoding that could be

used to create the identifier, any limits on what might constitute an identifier or any limits on the kind of information that could be encoded by that identifier. Indeed, given the fact that the claims do not even require *using* the personal identifier, the claims could feasibly be read on any modern payment system, so long as there is *some* encrypted information that STS can label as a "customer identifier." Thus, to the extent preemption is even a consideration, it supports patent ineligibility. *See Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 88-89 (2012) (explaining that narrow abstract ideas inhibit future innovation).

### III. THE '893 PATENT CLAIMS LACK AN "INVENTIVE CONCEPT."

The claims of the '893 patent lack an inventive concept that might "transform" their nature under the second step of the *Alice* inquiry. As explained above and in Poynt's motion, the claims recite generic and existing components that are used for their ordinary purpose, and include no limitations that improve the functioning of any of the devices.

#### A. STS's Proposed Construction Does Not Supply an Inventive Concept.

Perhaps recognizing that nothing in claims recites any technical improvement that could be deemed an inventive concept at step two of *Alice*, STS proposes a claim construction. Specifically, STS suggests that the term "customer identifier" should be construed to mean "an electronic data identifier used to anonymously identify a customer's bankcard data for electronic payment processing." This proposed construction does not help STS's argument.

First, the limitation is entirely functional, and does not purport to import any sort of *structural* requirements into the claims. In *Two-Way Media*, the Federal Circuit rejected a patentee's argument that a limitation provided a technical improvement (and thus an inventive concept) when the claim used only "generic functional language to achieve the[] purported solutions" and failed to claim *how* those solutions were achieved. 874 F.3d at 1339. Likewise, in *Clarilogic, Inc. v. FormFree Holdings Corp.*, 681 F. App'x 950, 954-55 (Fed. Cir. 2017), the Federal Circuit held that a claim was not inventive because its allegedly inventive result was achieved "via an unknown and unclaimed process." "Absent any limitation to how the data are changed, there is little, if any, transformative effect." *Id*.

STS's proposed construction provides no inventiveness for the same reason. The claim,

1  construed as STS suggests, continues to provide no *how* – it does nothing to restrict *how* the
2  identifier is created, *how* it is structured or *how* it is used.  And given that the claims do not
3  require the "customer identifier" to be used *at all* (to the contrary, the only thing that happens in
4  the claims with respect to the customer identifier is that it is "received"), the claim construction
5  provides *nothing* that might transform the nature of the claim.  More specifically, it does not add
6  any sort of inventive *implementation* but instead simply specifies that a customer identification
7  (which may take any form) is used (in some unspecified way) in connection with (any,
8  unspecified step of) electronic payment processing.

9        The second reason STS's proposed construction fails to save the claims is because the
10  alleged "customer identifier" solution is itself an abstract idea.  The purported solution that STS
11  seeks to import into the claims (using an anonymous customer identifier that does not reveal
12  sensitive information) simply applies the abstract concept of encoding to bankcard data.  As
13  explained in Poynt's opening brief, the Federal Circuit has already recognized that encoding is an
14  abstract idea.  *See RecogniCorp v. Nintendo Co.*, 855 F.3d 1322, 1326 (Fed. Cir. 2017) (finding
15  that claims were directed to "standard encoding and decoding, an abstract concept long utilized to
16  transmit information").  As another example, in *Traders Tr. Co.*, 76 F. Supp. 3d at 551, the court
17  found that the indistinguishable idea of "providing a user with aliases to use in conducting
18  transactions" was abstract.

19        As such, STS's claims merely combine the abstract idea of authorizing credit card
20  payments with the abstract idea of encoding.  But the Federal Circuit has confirmed, multiple
21  times, that a second abstract idea cannot be the inventive concept that saves the first.  In
22  *RecogniCorp*, the court held that the addition of an abstract mathematical formula did not provide
23  an inventive concept to claims directed to the abstract idea of encoding.  "**Adding one abstract**
24  **idea (math) to another abstract idea (encoding and decoding) does not render the claim**
25  **non-abstract.**" *Id*. at 1327 (emphasis added).  Likewise, in *Shortridge v. Found. Constr. Payroll*
26  *Serv., LLC*, 655 F. App'x 848, 853 (Fed. Cir. 2016), the Federal Circuit found that a business
27  method claim's inclusion of an abstract "one size fits all" algorithm did not provide an inventive
28  concept.  And in *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1368

1   (Fed. Cir. 2015), the Federal Circuit explained that specific calculations in a claim that was

2   directed to the abstract idea of budgeting were insufficient because "they could still be made

3   using a pencil and paper"—*i.e.* they were abstract (internal quotation marks omitted).  Inserting

4   abstract encoding into the already abstract process claimed by the '893 patent does not provide an

5   inventive concept.  *See SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1168-69 (Fed. Cir. 2018)

6   (rejecting purported inventive concepts when "they were themselves abstract").

      **B.   The '893 Patent Does Not Claim "a Technical Solution to a Technical Problem."**

9   STS also seeks to invoke the reasoning of *DDR Holdings, LLC v. Hotels.com, L.P.*, 773

10  F.3d 1245 (Fed. Cir. 2014), arguing that its patent is inventive because it provides "a technical

11  solution to a technical problem."  Opp. at 15.  If anything, it provides an abstract solution to a

12  long-existing problem, and merely applies it in the specific context of wireless payment

13  processing.

14  For its "technical problem," STS explains that "[i]ssues relating to payment security in the

15  wireless and Internet context simply did not exist prior to the Internet."  Opp. at 14.  This truism

16  does not change the fact that the '893 patent has nothing to do with Internet.  The word "Internet"

17  does not appear once in either the claims or specification and STS's brief admits that security

18  concerns and credit card fraud existed prior to the Internet.  Opp. at 15.  The risk that a bad actor

19  (e.g., a corrupt restaurant waiter or taxi driver) could obtain and misuse a person's credit card

20  information during payment processing is not a "problem specifically arising in the realm of

21  computer technology" as STS contends.  Opp. at 14.  As one court recognized, "The use of aliases

22  to maintain privacy in financial transactions is not limited to Internet transactions, indeed, theft of

23  credit cards and other financial information occurred before the Internet."  *Traders Trust Co.*, 76

24  F. Supp. 3d at 551 (D. Del. 2014).  The mere fact that the Internet allegedly provided more

25  opportunities for fraud does not transform credit card fraud into an Internet-specific problem.

26  "The patent claims here do not address problems unique to the Internet, so *DDR* has no

27  applicability."  *Capital One Bank*, 792 F.3d at 1371.

28  Nor do the claims provide a technical solution.  The patent specification's purported

1  solution is merely to take data that is sensitive and replace it with data that is not sensitive but that
2  can be used to identify the sensitive data.  As the Federal Circuit has recognized, this solution—
3  encoding—is a non-technical "abstract concept long utilized to transmit information."
4  *RecogniCorp*, 855 F.3d at 1326.  This is not a technical solution that improves the functioning of
5  the claims' generic devices or the network that connects them.  It, at most, is a *communications*
6  solution that changes the intangible bankcard data into something else, as is the case with *non-*
7  *computer applications* of encoding.  *See SAP* (finding no inventive concept when the claimed
8  innovation was not an "improved computer or network, but the improved mathematical
9  analysis").  898 F.3d at 1168.

10 **IV.    THERE ARE NO RELEVANT FACTUAL DISPUTES.**

11     Because STS's patent lacks any *legally sufficient* inventive concept, there are no issues of
12 fact that impact Poynt's motion to dismiss.  STS nonetheless highlights several of the allegations
13 in its complaint, but makes no effort to identify what questions of fact it believes are in dispute or
14 how they impact the eligibility analysis.  In truth, there are no such factual disputes and, as such,
15 there no questions of fact to be resolved (under the clear and convincing evidence standard or
16 otherwise).  Put differently, STS's patent is ineligible even if STS's factual allegations (as
17 opposed to its legal conclusions) are true.  *See Uniloc USA, Inc. v. HTC Am., Inc.*, No. C17-
18 1558JLR, 2018 U.S. Dist. LEXIS 100737, at *26 (W.D. Wash. June 14, 2018) (explaining that
19 "the court need not credit [] conclusory statements" in a complaint when determining subject
20 matter eligibility).

21     Looking to STS's allegations shows that there are no questions of fact presented here.
22 STS explains that paragraphs 8-9 of its First Amended Complaint "identify portions of the '893
23 patent specification detailing security concerns with wireless and card payments."  Opp. at 18.
24 Poynt does not dispute that the specification includes this discussion because it does not matter.
25 The '893 patent is nonetheless ineligible because, as explained above, (1) the security concerns
26 are not a technical problem, (2) the claimed process does not address that problem, and (3) the
27 specification discusses, at best, only abstract and non-inventive solutions to that problem.  *See*
28 *SAP*, 898 F.3d at 1169 (finding that pled facts did not prevent dismissal of claims when "there are

1  no factual allegations from which one could plausibly infer that they are inventive").

2  Next, STS highlights paragraphs 10-12, which discuss credit card fraud.  Opp. at 18.
Poynt does not dispute the fact that credit card fraud is a problem.  Again, Poynt only disputes the *legal conclusion* that it is a technical problem addressed by the '893 patent in an inventive and non-abstract way.  *See Burnett v. Panasonic Corp.*, 741 F. App'x 777, 779 n.1 (Fed. Cir. 2018) (explaining that factual allegations do not "preclude[] resolution of the eligibility question at the pleading stage" when the defendant "does not dispute these allegations" and "the asserted claims are patent-ineligible even when accepting the allegations as true").

Finally, STS identifies paragraphs 13 and 14, which argue that the '893 patent "poses a technological solution" in its specification through the use of the customer identifier, and that several parties have commented on the benefits of tokenization in the credit card industry.  Opp. at 18.  The first "fact" is actually a legal conclusion (i.e., about the solution recited in the specification is the kind of solution the Federal Circuit has labeled "technical") and irrelevant (because it is not recited in the claims) and the second is simply irrelevant (because, among other things, encoding is a longstanding and abstract idea, and because the *benefit* of an idea is orthogonal to whether the idea is abstract or concrete even if that idea is unconventional).[5]

The Federal Circuit's recent decision in *ChargePoint, Inc,* 2019 U.S. App. LEXIS 9191, at *29 is also instructive on the second prong of the *Alice* analysis.  There, the patentee relied on allegations in its complaint to argue that the patent-in-suit's innovation of providing network control of electrical chargers was an unconventional solution to a technical problem.  *Id.*  The Federal Circuit, however, explained that "network control is the abstract idea itself, and a claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept that renders the invention 'significantly more' than that ineligible concept."  *Id.* (internal quotation marks omitted).  Because STS's alleged inventive concept—encoding the private bankcard data as a customer identifier—is itself an abstract idea, it is legally insufficient to

---

[5] The benefits of using the "motive power of the electric of galvanic current" to "print intelligible, characters, signs or letters, at any distance" are immense.  But that did not stop the Court from invalidating Samuel Morse's patent to that idea.  *O'Reilly v. Morse*, 56 U.S. (15 How.) 62, 119-20 (1854).

1  provide an inventive concept, despite whatever other legal conclusions appear in STS's

2  complaint. None of STS's allegations preclude a finding of ineligibility on a motion to dismiss.

### V. FED. R. CIV. P. 12(G)(2) DOES NOT BAR A DECISION ON POYNT'S MOTION.

The Court should resolve Poynt's motion to dismiss despite the fact that the ineligibility of the '893 patent could have been raised in Poynt's first motion to dismiss. Rule 12(g)(2) reads: "Limitation on Further Motions. **Except as provided in Rule 12(h)(2)** or (3), a party that makes a motion under this rule must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." (emphasis added). Rule 12(h)(2) provides that defenses may be raised by a motion on the pleadings under Rule 12(c). Thus, STS complains that Poynt's motion is improper apparently because Poynt did not first file its answer to STS's Amended Complaint before bringing this motion as a Rule 12(c) motion on the pleadings.

The Ninth Circuit does not require such a strict and wasteful adherence to the technical requirements of Rule 12(g)(2). In *Pepper v. Apple Inc. (In re Apple iPhone Antitrust Litig.)*, 846 F.3d 313, 319 (9th Cir. 2017), the Ninth Circuit explained that this Court's decision to resolve a second motion to dismiss was not improper because Rule 12(g)(2) must be read in light of the general policy that the Federal Rules "be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." *Id*. at 318 (discussing the mandate of Fed. R. Civ. P. 1). "Denying late-filed Rule 12(b)(6) motions and relegating defendants to the three procedural avenues specified in Rule 12(h)(2) can produce unnecessary and costly delays, contrary to the direction of Rule 1." *Id*. Following this guidance, other courts in this district have ruled on motions to dismiss, including those asserting patent ineligibility, even when those defenses were first asserted in a subsequent motion to dismiss. *See Symantec Corp. v. Zscaler, Inc.*, No. 17-cv-04426-JST, 2018 U.S. Dist. LEXIS 48650, at *7 (N.D. Cal. Mar. 23, 2018) (collecting cases, and finding claims ineligible on a subsequent motion to dismiss because "doing so would serve the interests of judicial economy").

Finding STS's patent ineligible now—as opposed to after Poynt files as answer—better

serves the goal of obtaining the "just, speedy and inexpensive" resolution that the rules require. Fed. R. Civ. P. at 1. The alternative – to have Poynt refile this motion under Rule 12(c) a few weeks from now would not assist the Court in resolving the motion or preserve the party's resources. *See Pepper*, 846 F.3d at 319 (explaining that requiring that a defense be reasserted in a later motion "would have substantially delayed resolution of the [legal] question, and would have done so for no apparent purpose").[6]

## VI. CONCLUSION

For the foregoing reasons, Poynt respectfully requests that its motion to dismiss be granted.

Dated: May 24, 2019                    ORRICK, HERRINGTON & SUTCLIFFE LLP


By: ____*/s/ Jacob M. Heath*____
CLEMENT SETH ROBERTS
JACOB M. HEATH
WILL MELEHANI
Attorneys for Defendant Poynt Corporation

---

[6] The undersigned counsel notes that he did not intend even a technical violation of Rule 12(g)(2) and apologizes to the Court for the oversight.