**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **SALES TRANSACTION SYSTEMS, LLC.,**<br>Plaintiff**,**<br>vs.<br>**POYNT, CO.,**<br>Defendant**.** | CASE NO. 18-cv-06862-YGR<br><br>**ORDER DENYING MOTION TO DISMISS**<br>Re: Dkt. No. 31 |

Plaintiff Sales Transaction Systems, LLC ("STS") brings this action against Poynt Co. ("Poynt") for patent infringement. (Dkt. No. 24 ("FAC") ¶¶ 30-45.) Specifically, plaintiff alleges that defendant has infringed upon U.S. Patent No. 9,684,893 (the "'893 Patent"), which is entitled "Apparatus and Method for a Wireless Point of Sale Terminal." (*See id.* ¶¶ 6, 30-45.) Now before the Court is defendant's motion to dismiss plaintiff's complaint for patent ineligibility under 35 U.S.C. § 101 ("Section 101"). (Dkt. No. 31 ("MTD").) Having carefully considered the pleadings and the papers submitted, as well as oral argument from counsel on June 11, 2019, and for the reasons set forth more fully below, the Court **DENIES** defendant's motion to dismiss. In summary, the Court finds that it must perform claim construction before resolving the issue.

**I.    BACKGROUND**

Plaintiff alleges as follows:

The '893 Patent was issued by the United States Patent and Trademark Office ("USPTO") on June 20, 2017 and is owned by plaintiff, who has, by assignment, received all right, title, and interest from the inventor. (FAC ¶¶ 6-7; *see also* Dkt. No. 24-1 ("Patent").) The '893 Patent "identifies and sets out to solve several problems relating to conducting secure transactions using wireless devices." (*Id.* ¶ 8.) Specifically, the '893 Patent identifies the following problems: (i) people often carry multiple cards that use magnetic stripes to conduct credit or bank card transactions and such devices have changing security issues, with which the banking industry

cannot always keep up (*id.* ¶ 8); (ii) standard transactions share the customer's private data, such as card number, name, and/or expiration date data for its own purposes (*id.* ¶ 9); (iii) the risks associated with sharing credit and bank card data has evolved into a significant technical problem as more transactions have begun to involve wireless communications, such as WiFi, Bluetooth, RFID, NFC, and cellular communications (*id.* ¶ 10). Such that now, (a) these transactions involve the exchange and/or storage of private data, which is vulnerable to hacking and other security breaches; (b) there are also Internet-specific problems, including the possibility for criminals to intercept wireless transmissions and obtain data without either party being aware that a breach of security has occurred and without being physically present; and (c) the Internet has made it much easier to use fraudulently obtained data via e-commerce, where the user is not physically present and does not have to interact with a salesperson. (*Id.*)

To address these problems, the '893 Patent "proposes a technological solution . . . , including creating a secure customer identifier that is based on the customer's private data, such as bank card data, but does not include any private identifying information when transmitted to the merchant." (*Id.* ¶ 13 (citing Patent at 7:29-31).) "This prevents the customer's private data from being shared with merchants, but still allows card transactions to take place using the traditional financial structure." (*Id.* (citing Patent at 1:49-50).) "This solution offers a technical solution to the technical problems posed by conducting such financial transactions wirelessly." (*Id.* ¶ 14.)

Defendant "Poynt makes, uses, sells, and/or offers to sell provides [sic] various mobile point of sales terminals for processing bankcards, including credit cards, using near-field communications via wireless communication network, including at least the Poynt Smart Terminal and Poynt 5 (the 'Poynt Products')." (*Id.* ¶ 16.) Poynt also sells and offers for sale, along with the Poynt Products, software, applications, and APIs (collectively, "Software"), including Software "that is configured to operate in conjunction with the Poynt Products to provide therewith various payment capabilities, including but not limited to the Poynt OS, Poynt HQ, and other apps Poynt offers in the Poynt App Marketplace, including but not limited to eThor and Lightning (the Poynt Products provided with such Software referred to herein as the 'Accused Systems')." (*Id.*)

The Accused Systems are "made or especially adapted for infringement of the '893 Patent because they include the features . . . which cause the Poynt Products and Software to infringe on the '893 Patent." (*Id.* ¶ 17.)

On October 3, 2018, plaintiff, through its counsel, formally notified Poynt's CEO Osamaa Bedier, via FedEx letter, that products made, used, sold, or offered for sale by Poynt, including the Accused Systems, infringed the Asserted Patent, including a chart detailing the infringement of an exemplary claim. (*Id.* ¶ 28.) Poynt received this letter on or about October 4, 2018. (*Id.*)

Relevant here, plaintiff further alleges that "the '893 Patent is given the presumption of validity. Since becoming aware of the '893 Patent and the basis for infringement on or about October 4, 2018, Poynt has not established by clear and convincing evidence that the '893 Patent is invalid for any reason, nor has Poynt challenged the validity of the '893 Patent in any federal court or before the USPTO." (*Id.* ¶ 39.)

The '893 Patent includes two independent claims, Claims 1 and 5. In their briefing, parties offer Claims 1 and 5, respectively, as representative. (*See* Dkt. No. 35 ("Opp.") at 4-5; MTD at 2-3.) Claim 1, offered by the plaintiff as representative, reads as follows:

1. A merchant point of sale (POS) transaction terminal, for acceptance of bankcard payment pursuant to a sales transaction, comprising:
   a. the merchant POS transaction terminal is a mobile and portable wireless device with a built-in interface to a cellular wireless communication network that communicates wirelessly via the wireless communication network to a remote payment system;
   b. the merchant POS transaction terminal received input of a merchant identifier that identifies the merchant to the remote payment system, and wherein the merchant identifier identifies a retail establishment, and generates transaction specific data such as a transaction reference number, date and time, and a payment amount;
   c. the merchant POS transaction terminal receives and accepts input of bankcard data from a customer with a customer identifier, for a payment by the bankcard for a sales transaction and assembles a payment authorization request record with the merchant identifier, the transaction specific data and the customer bankcard data and wirelessly transmits the payment authorization request record from the merchant POS transaction terminal for the payment for the sales transaction to the remote payment system for forwarding via a gateway to a card authorization network; and
   d. the merchant POS transaction terminal then wirelessly receives from the remote payment system a payment approval record for the sales transaction.

(Patent at 14:31-59.)

Claim 5, offered by defendant as representative, reads as follows:

> 5. A method for a merchant point of sale (POS) transaction terminal, for acceptance of bankcard payment pursuant to a sales transaction, comprising the steps of:
>    a. providing the merchant POS transaction terminal with an embedded mobile and portable wireless device with a built-in interface to a cellular wireless communication network that communicates wirelessly via the wireless communication network to a remote payment system;
>    b. receiving by the merchant POS transaction terminal input of a merchant identifier that identifies the merchant to the remote payment system, and wherein identifying by the merchant identifier a retail establishment, and generating by the merchant POS transaction terminal transaction specific data such as a transaction reference number, date and time, and a payment amount;
>    c. receiving and accepting by the merchant POS transaction terminal input of bankcard data from a customer with a customer identifier for a payment by the bankcard for a sales transaction and assembling by the merchant POS transaction terminal a payment authorization request record with the merchant identifier, transaction specific data and the customer bankcard data and transmitting wirelessly by the merchant POS transaction terminal the payment authorization request record for the payment for the sales transaction to the remote payment system for forwarding via a gateway to a card authorization network; and
>    d. receiving wirelessly by the merchant POS transaction terminal from the remote payment system a payment approval record for the sales transaction.

(Patent at 15:5-16:10.)

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted).

For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving

party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nonetheless, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) ). Therefore, mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004). Furthermore, "'[a] plaintiff may plead [him]self out of court'" if he "plead[s] facts which establish that he cannot prevail on his . . . claim." *Weisbuch v. County of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)).

### III. ANALYSIS

Poynt's motion argues that the patent-in-suit fails to claim patent-eligible subject matter under Section 101 in light of the Supreme Court's decision in *Alice Corp. Pty. Ltd. v. CLS Bank International*. (*See* MTD (citing *Alice*, 573 U.S. 208, 217 (2014)).) The question of whether a claim recites patent-eligible subject matter under Section 101 is ultimately a question of law. *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1338 (Fed. Cir. 2017) ("Patent eligibility under § 101 is an issue of law[.]"); *In re Roslin Inst. (Edinburgh)*, 750 F.3d 1333, 1335 (Fed. Cir. 2014) (same). The Federal Circuit has identified certain factual questions underlying the Section 101 analysis. *See Berkheimer v. HP Inc.*, 881 F.3d 1360, 1368–69 (Fed. Cir. 2018). A district court may resolve the issue of patent eligibility under Section 101 by way of a motion to dismiss. *See, e.g.*, *Secured Mail Sols. LLC v. Universal Wilde, Inc.*, 873 F.3d 905, 912 (Fed. Cir. 2017) (affirming determination of ineligibility made on 12(b)(6) motion); *Content Extraction & Transmission LLC v. Wells Fargo Bank, Nat'l Ass'n*, 776 F.3d 1343, 1345 (Fed. Cir. 2014) (same).

Section 101 "defines the subject matter that may be patented under the Patent Act." *Bilski v. Kappos*, 561 U.S. 593, 601 (2010). Under Section 101, the scope of patentable subject matter encompasses "any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof." *Id.* (quoting 35 U.S.C. § 101). These categories are broad, but they are not limitless. Section 101 "contains an important implicit exception: Laws of

5

nature, natural phenomena, and abstract ideas are not patentable." *Alice*, 134 S.Ct. at 2354 (citation omitted). These three categories of subject matter are excepted from patent-eligibility because "they are the basic tools of scientific and technological work," which are "free to all men and reserved exclusively to none." *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 566 U.S. 66, 71 (2012) (citations omitted). The Supreme Court has explained that allowing patent claims for such purported inventions would "tend to impede innovation more than it would tend to promote it," thereby thwarting the primary object of the patent laws. *Id.* However, the Supreme Court has also cautioned that "[a]t some level, all inventions embody, use, reflect, rest upon, or apply laws of nature, natural phenomena, or abstract ideas." *Alice*, 134 S.Ct. at 2354 (alteration, internal quotation marks, and citation omitted). Accordingly, courts must "tread carefully in construing this exclusionary principle lest it swallow all of patent law." *Id.*

In *Alice*, the Supreme Court refined the "framework for distinguishing patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts" originally set forth in *Mayo*, 566 U.S. at 77. *Alice*, 134 S.Ct. at 2355. This analysis, known as the "*Alice*" framework, proceeds in two steps as follows:

> First, we determine whether the claims at issue are directed to one of those patent-ineligible concepts. If so, we then ask, "[w]hat else is there in the claims before us?" To answer that question, we consider the elements of each claim both individually and "as an ordered combination" to determine whether the additional elements "transform the nature of the claim" into a patent-eligible application. We have described step two of this analysis as a search for an " 'inventive concept' "—i.e., an element or combination of elements that is "sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself."

*Id.* (alterations in original) (citations omitted); *see also In re TLI Commc'ns LLC Patent Litig.*, 823 F.3d 607, 611 (Fed. Cir. 2016) (describing "the now familiar two-part test described by the Supreme Court in *Alice*").

No bright-line test exists for separating abstract ideas from concepts that are sufficiently concrete so as to require no further inquiry under the first step of the *Alice* framework. *See, e.g., Alice*, 134 S.Ct. at 2357 (noting that "[the Supreme Court] need not labor to delimit the precise

contours of the 'abstract ideas' category in this case"); *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245, 1256 (Fed. Cir. 2014) (observing the same). As a result, in evaluating whether particular claims are directed to patent-ineligible abstract ideas, courts often begin by "compar[ing] claims at issue to those claims already found to be directed to an abstract idea in previous cases." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1334 (Fed. Cir. 2016).

The patent-at-issue in this case bears relevant similarities to the one addressed by the Federal Circuit in *Inventor Holdings, LLC v. Bed Bath and Beyond, Inc.*, 876 F.3d 1372 (Fed. Cir. 2017). There, as here, "[t]he claimed invention relate[d] to a method purchasing goods at a local point-of-sale system[.]"[1] *Id.* at 1374. In *Inventor Holdings*, the court noted that "[t]he idea that a customer may pay for items ordered from a remote seller at a third-party's local establishment is the type of fundamental business practice that, when implemented using generic computer technology, is not patent-eligible under *Alice*[.]"[2] *Id.* at 1378.

---

[1] The representative claims in *Investor Holdings* read as follows:
  8. A method of processing a payment for a purchase of goods, comprising the steps of:
    receiving at a point-of-sale system a code relating to a purchase of goods;
    determining if said code relates to a local order or to a remote order from a remote seller;
    if said code relates to a remote order, then
    determining a price for said remote order,
    receiving a payment for said remote order, and
    transmitting to said remote seller data indicating that said payment has been received for said remote order.
  25. A method for a remote seller to process a payment for the sale of goods, comprising the steps of:
    receiving a remote order for a purchase of goods from a customer;
    generating a code and a purchase price for said remote order;
    transmitting said code and said purchase price to the customer;
    providing order data for use by a point-of-sale system of a local seller in receiving a payment for said remote order;
    initiating, responsive to said payment data, a shipment of said goods; and
    receiving a payment for said remote order from said local seller.
  41. A method [for] submitting a payment for a purchase of goods, comprising the steps of:
    transmitting an order for goods to a remote merchant;
    receiving a code and a purchase price for said order from said remote merchant;
    providing at least one of said code and said purchase price for use by a point-of-sale system of a local seller in processing a payment for said order;
    submitting said payment to said local seller at said point-of-sale system; and
    receiving said goods from said remote merchant.
*Id.* (citations omitted).

[2] Procedurally, the Federal Circuit addressed not with a Section 101 motion, which the district court had granted and the circuit had previously affirmed, *see Inventor Holdings*, 876 F.3d

The claims at issue here similarly present the *idea* of transmitting payment information using generic computer technology.[3] (*See* Patent at 14:31-59; 15:5-16:10.) However, according to plaintiff, these claims also introduce an added element of security – namely a method by which to conceal a customer's personal bankcard information through the use of "a customer identifier." (*See, e.g.*, *id.* at 14:46-56.) Whether this element of security saves the '893 Patent from invalidity turns on the meaning of the terms used to describe the element, including but not limited to "customer identifier," "merchant identifier," "transaction specific data," and "payment authorization request," among others. (*See id.*) Thus, as claim construction has not yet occurred in this case, the Court finds that it cannot, at this juncture, adjudicate the issue of whether the patent is directed to patent-ineligible ideas. *See Bancorp Servs., L.L.C. v. Sun Life Assurance Co. of Can. (U.S.)*, 687 F.3d 1266, 1273-74 (Fed. Cir. 2012) (noting "that it will ordinarily be desirable—and often necessary—to resolve claim construction disputes prior to a § 101 analysis, for the determination of patent eligibility requires a full understanding of the basic character of the claimed subject matter").

\\

\\

\\

\\

\\

---

at 1377, but defendant's motion for attorney's fees under Section 285, brought on the grounds that in light of *Alice*, the plaintiff's claims were objectively without merit. *Id.* The Federal Circuit affirmed the district court's decision to award attorney's fees and found that the plaintiff's assertion of the claims above was not only patent-ineligible under Section 101 and *Alice*, but also exceptionally weak. *See id.* at 1378-80.

[3] Plaintiff's argument that the patent-at-issue is directed to a machine and is therefore not abstract also fails. As a preliminary matter, plaintiff does not provide, and the Court is not aware of, any binding authority that suggests that claims toward a machine are, by their nature, not abstract. (*See* Opp. at 10-11 (citing to district court cases only).) Moreover, the claims asserted here fail to teach anything about the machine or how it is relevant to the method described. (*See* Patent at Claims 1, 5.) Plaintiff's assertion during oral argument that the patent's instruction regarding "transformation logic" does not so teach as it deals with data and software rather than hardware. (*See, e.g.*, Patent at 9:31-52.)

## IV. CONCLUSION

For the foregoing reasons, the Court **DENIES** defendant's motion to dismiss plaintiff's claims as patent-ineligible under Section 101. Accordingly, and as noted on the record during the June 11 hearing, the Court **SETS** a *Markman* hearing on claim construction for Wednesday, December 11, 2019 on the Court's 2:00 p.m. calendar. The Court further refers the action to Magistrate Judge Thomas Hixson for a settlement conference to be completed no later than forty-five days from any order on claim construction.

This Order terminates Docket Number 31.

**IT IS SO ORDERED.**

Dated: June 19, 2019

**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**